**Ada Turkish TRASK, as a Member of the Dora and Jacob Cohen Charitable Foundation, Inc., Plaintiff,**

v.

**William KASENETZ, Daniel Eisenberg, Iver Kasenetz and Gary B. Freidman, Defendants.**

No. 92 C 4037.

United States District Court, E.D. New York.

April 9, 1993.

Spizz & Cooper (Harvey W. Spizz, of counsel) Mineola, NY, for plaintiff.

Greenfield Eisenberg Stein & Senior (Daniel Eisenberg and Jeffrey H. Sheetz, of counsel) and Schlam Stone & Dolan (Richard H.

Dolan, of counsel) New York City, for defendants.

## MEMORANDUM AND ORDER

### NICKERSON, District Judge:

Plaintiff Ada Turkish Trask brings this action as a member of the Dora and Jacob Cohen Charitable Foundation (the Foundation). She seeks an order removing Foundation directors and officers or, in the alternative, dissolving the Foundation under sections 706(d), 714(c), and 1102(a)(2)(D) of the New York Not–for–Profit Corporation Law. She also seeks damages and attorney's fees under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961–1968, on behalf of the Foundation.

Plaintiff, a resident of Florida, is the daughter of the Foundation's founder, Jacob Cohen. She was a director of the Foundation prior to December 17, 1991.

The named defendants are the current Foundation directors. Until November 1989, the Foundation was guided by plaintiff and two other directors, namely, defendant William Kasenetz (Kasenetz), Jacob Cohen's son-in-law; and defendant Daniel Eisenberg, Jacob Cohen's attorney since the 1950s. In November 1989, defendants Iver Kasenetz (Kasenetz's son) and Gary B. Freidman (Daniel Eisenberg's law partner) were elected as directors. Iver Kasenetz resides in Virginia, while the other defendants reside in New York.

The action was initially brought in July 1992 in the Supreme Court of the State of New York, County of Nassau. Plaintiff moved for a preliminary injunction, enjoining the defendants from expending any Foundation funds pending the trial in this action. On July 30, 1992 Judge Edward J. Hart temporarily restrained defendants from expending Foundation funds.

Defendants, basing federal jurisdiction on the RICO claim, removed the action to this court where they cross-moved to dismiss. At oral argument the court ordered that the state court's temporary restraining order be continued until this court decided the motions before it.

### I

The complaint alleges, in substance, the following facts about the Jacob Cohen family companies, the inter-family litigation, and the related wrongful acts by the Foundation's directors.

Up until 1961 Jacob Cohen owned a 50% interest in a group of corporations and partnerships. His sons, Samuel and Louis, owned 30% and 20% respectively. In that year, Jacob placed one-half of his share of the family companies into four inter-vivos trusts. One of these trusts was for the benefit of plaintiff. Kasenetz and Samuel Cohen served as trustee for the trusts.

During the 1960s Samuel Cohen improperly borrowed funds from the trusts and other entities, in which the trusts had interests so that he could participate in business opportunities, with Meyer Lansky. In 1971 Samuel Cohen pleaded guilty to conspiring with Meyer Lansky to skim $36 million in profits from the Flamingo Hotel in Las Vegas, Nevada.

Jacob Cohen died in 1974. His remaining 25% ownership of the family companies was bequeathed to Samuel Cohen's two sons and to Kasenetz. The legatees assumed loans owed by Jacob Cohen. Kasenetz was named as executor of the estate. Apparently the financial relations between the family companies were complex and not well-documented.

In 1979 plaintiff brought an action in state court to compel an accounting from Kasenetz. In 1981 she also brought a RICO action in the Eastern District of New York against Kasenetz, Eisenberg, and Samuel Cohen. After years of litigation, the various parties entered a stipulation of settlement, providing that the estate of Samuel Cohen would pay $1,163,529 to plaintiff (or her trust) and that Kasenetz would pay $36,471 to plaintiff and $520,000 to her counsel.

There remains approximately $1.3 million in one of the trusts established by Jacob Cohen for the benefit of plaintiff and $500,000 in the estate of Jacob Cohen that should have been (but has not been) distributed to plaintiff.

The present dispute involving the Foundation began in 1989. Previously the Founda-

tion made distributions solely or primarily to the Jacob C. Cohen Community Synagogue, an Orthodox synagogue in Miami Beach, Florida, pursuant to a Foundation resolution adopted while Jacob Cohen was alive. In 1989 the synagogue ceased its operations.

In that year the directors authorized grants to two hospitals that were not Jewish-affiliated, contravening Jacob Cohen's intentions as plaintiff understood them.

Plaintiff or her son subsequently proposed that the Foundation make grants solely to an Orthodox synagogue then being built in the Surfside/Bal Harbour area of Florida, adjacent to Miami Beach. During September and October of 1991, plaintiff's son pursued negotiations with Eisenberg, who told the son that the Foundation would grant plaintiff's request only if she, the son, and a third person released Eisenberg, his law firm, Kasenetz, and eight other persons or entities from every legal claim the three might have.

Plaintiff refused to provide such a release. Soon thereafter, at a meeting of the Foundation members on December 17, 1991, the assembled members failed to re-elect plaintiff to the Foundation board of directors.

## II

■ The court addresses first the RICO claim. To state a claim under the RICO Act, a plaintiff must allege that each defendant violated section 1962 and that plaintiff was injured in its business or property "by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

### 1. WHETHER DEFENDANTS VIOLATED SECTION 1962

■ To establish a violation of section 1962, plaintiff must allege seven constituent elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce. 18 U.S.C. § 1962(a)–(c) (1976)." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct.

1280, 79 L.Ed.2d 684 (1984). Or plaintiff must allege that the defendants conspired to engage in such a pattern of racketeering activity. 18 U.S.C. § 1962(d).

■ Defendants contend that the complaint, among its other deficiencies, does not allege that defendants engaged in "racketeering activity" or that such activity constitutes a "pattern." In her response plaintiff sets forth facts not alleged in the complaint, and she requests leave to amend the complaint should the court find it lacking.

### a. *"Racketeering activity"*

"Racketeering activity" is defined under 18 U.S.C. § 1961(1) to include, among other crimes, any act which is indictable under 18 U.S.C. § 1341 (relating to mail fraud), 18 U.S.C. § 1343 (relating to wire fraud), and 18 U.S.C. § 1951 (relating to extortion). Plaintiff says that the complaint is sufficient to state that defendants violated each of these statutes by coercively seeking to induce plaintiff to release defendants and others from civil liability, and by making improper donations.

#### (i) *Mail and wire fraud*

■ The mail and wire fraud statutes authorize criminal punishment of "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" by use of interstate mail or wire communication. 18 U.S.C. §§ 1341, 1343. These statutes require that the defendants have engaged in "some element of deception." *McLaughlin v. Anderson*, 962 F.2d 187, 192 (2d Cir.1992).

The complaint here makes no allegation that plaintiff was deceived either when the Foundation directors made allegedly improper donations or when Eisenberg attempted to induce plaintiff and her son to sign releases.

Plaintiff speculates that the release-for-donation transaction would have led to a deception because the Foundation directors would have concealed their self-dealing from the New York Attorney General and the Internal Revenue Service. Plaintiff has cited no case, and the court knows of none, in which a

charitable corporation was found to have violated the mail or wire fraud statute simply because it failed to divulge in a tax return a consummated transaction that involved self-dealing. But even if such a non-disclosure constitutes mail fraud, the release-for-donation transaction was never consummated, depriving defendants of the opportunity to conceal it.

The court therefore sees no basis to conclude that plaintiff could amend the complaint adequately to allege mail or wire fraud. *See* Fed.R.Civ.P. 9(b). *See also Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986) (holding that allegations of fraud must specify the time, place, speaker, and content of alleged misrepresentation).

(ii) *Extortion*

Plaintiff also contends that the proposed release-for-grant transaction constitutes extortion.

■ The extortion statute authorizes criminal punishment of "[w]hoever in any way or degree obstructs, delays, or affects commerce ... by extortion." 18 U.S.C. § 1951(a). The term "extortion" is defined to mean "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The element of "fear" can be met by putting the victim in reasonable fear of economic loss. *United States v. Capo,* 817 F.2d 947, 951 (2d Cir.1987).

The complaint makes no allegation that the defendants attempted to induce plaintiff either to approve grants or sign releases through the use or threat of force, or by causing plaintiff to fear economic loss. In her brief plaintiff contends that she feared that (1) the Bal Harbor synagogue would not receive a donation, (2) she would be removed from the Foundation board of directors, and (3) the defendants would misuse their fiduciary responsibility as directors of the Foundation. However reasonable these fears may have been, they do not constitute a reasonable fear of economic loss to either the plaintiff or Foundation.

Plaintiff also contends in her brief that she feared that Eisenberg and Kasenetz would use their powers as executors and, in the case of Kasenetz, his power as trustee, to delay indefinitely distributions to plaintiff and her son of $500,000 in estate assets and $1.3 million in trust assets. Plaintiff's complaint and brief do not say that Eisenberg or Kasenetz ever suggested that trust and estate distributions would be delayed if plaintiff did not grant the releases.

■ Nevertheless, extortion need not be pleaded with particularity. Assuming plaintiff can make a showing that she reasonably feared Eisenberg and Kasenetz would cause her economic harm, she could plead in an amended complaint an act of attempted extortion in violation of 18 U.S.C. § 1951(a).

b. *Pattern of racketeering activity*

■ But a single act of racketeering activity does not constitute a "pattern" of such activity. In order for such activity to fall within the reach of the RICO Act, it must be both continuous and related, and fall within a 10 year period. 18 U.S.C. § 1961(5). *See also H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989).

In an effort to show a pattern of fraudulent activity, plaintiff contends in her brief that defendants have engaged in at least three other related frauds since the 1960s. First, some defendants concealed no-interest loans to Samuel Cohen when, as trustees, they owed a duty to plaintiff. Second, plaintiff "suspects" defendants are defrauding the Internal Revenue Service. Last, the settlement of inter-family litigation reached in the mid–1980s was induced by fraud.

Even if these purported frauds were alleged in the complaint, they fall far short of establishing a "pattern." The alleged loans to Samuel Cohen were made more than 10 years before the alleged release-for-grant transaction. The other allegations of fraud are entirely conclusory and speculative, and they lack the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

The complaint, however amended, fails or would fail to allege that defendants engaged in a pattern of racketeering activity.

### 2. INJURY "BY REASON OF A VIOLATION OF SECTION 1962"

Even if the complaint could be amended adequately to allege a pattern of racketeering activity, it nevertheless fails to allege injury proximately caused by the pattern or the individual predicate acts. *See Holmes v. Securities Investor Protection Corp.,* —— U.S. ——, —— – ——, 112 S.Ct. 1311, 1316–18, 117 L.Ed.2d 532 (1992); *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23 (2d Cir.1990).

There is a fundamental ambiguity that pervades the plaintiff's complaint and papers. The complaint is styled as a suit brought by a member of the Foundation, seemingly on behalf of the Foundation. Moreover, the complaint requests that an award of compensatory damages be paid to the Foundation. If the action is brought derivatively on behalf of the Foundation, as the complaint suggests, it must allege that the Foundation was injured in its "business or property."

Yet, nowhere in the complaint or brief does plaintiff allege or explain that the Foundation was injured in its business or property. The complaint solely alleges that certain directors breached a duty to the Foundation. But to allege a breached duty is not to allege tangible injury.

Assuming instead that plaintiff intended to bring this action on behalf of herself as well as the Foundation, the court holds that she still fails to show injury. At most the complaint shows that defendants fraudulently attempted to extort releases. Because the attempted extortion failed, she has shown no injury.

Plaintiff also contends she was injured by the failure of the Foundation members to re-elect her as a member of the board of directors. However contrary to the wishes of Jacob Cohen such conduct may have been, it does not constitute cognizable injury under section 1964 because plaintiff had no property interest in her position as a Foundation director.

In summary, the complaint fails to allege a claim under the RICO Act. Moreover, the court finds no reason to believe that the complaint's many deficiencies can be corrected by repleading. Accordingly, defendant's motion to dismiss the RICO claim is granted, and plaintiff's request for leave to amend the complaint is denied.

### III

This case was removed by defendants from state court solely on the ground that the complaint stated a federal cause of action under the RICO Act. None of the parties has contended that this court has jurisdiction on any ground other than the federal questions presented by the now-dismissed RICO claims. Moreover, the court cannot determine by examining the papers whether it can exercise jurisdiction based upon diversity of citizenship, because the citizenship of the parties is nowhere indicated. Therefore, the court's authority to decide the remaining issues would be based solely upon principles of pendent jurisdiction.

■ But even if the court assumed that plaintiff is a citizen (not merely a resident) of Florida, and that defendants are citizens (not merely residents) of New York and Virginia, it should not be compelled to exercise jurisdiction based upon diversity of citizenship. This court knows of no other court that has examined this precise question, nor do the leading treatises on federal civil procedure address it. *See, e.g.,* Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure;* James Wm. Moore, Jo Desha Lucas & George J. Grotheer, Jr., *Moore's Federal Practice* (2d ed.).

The statutory scheme authorizing federal diversity jurisdiction, under 28 U.S.C. § 1332, and the removal of diversity actions, under 28 U.S.C. § 1441(b), permits a plaintiff first to chose the forum in which he or she intends to litigate. It then protects defendants, if citizens of a foreign state, from the feared favoritism of plaintiff's state court by allowing the foreign defendant to remove the case to a federal district court.

Where, for example, a New York citizen choses to sue a Florida citizen in a New York State court, the Florida defendant may remove the action under 28 U.S.C. § 1441(b). But where, as may be assumed here, a Florida citizen choses to sue a New York citizen in

a New York State court, the New York defendant may not remove the case. In such an instance, the defendant has no interest recognized by a federal statute in a federal forum.

No provision of the Judiciary Act compels this court to retain jurisdiction over a case removed by citizens of this state based upon a federal claim that has been dismissed, even where the parties are citizens of different states. The underlying logic of the statutory scheme suggests, to the contrary, that the court should remand the case to the New York State court in which plaintiff first chose to bring it. Moreover, that court would have greater familiarity and interest in the issues that remain insofar as they relate solely to the regulation of a New York State not-for-profit corporation.

Therefore, the court declines to exercise jurisdiction over the remaining claims. As a matter of economy, convenience, fairness, and comity the case is remanded to the state court pursuant to 28 U.S.C. § 1447(c). *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

Because plaintiff has alleged facts suggesting that defendants attempted to use their position as Foundation directors for personal advantage, plaintiff. may wish to invite the New York State Attorney General (New York State Department of Law—Charities, Trusts & Estates division) to intervene in this case.

Plaintiff should direct its motion for a preliminary injunction to the state court.

So ordered.