Arthur **TURKISH**, as Co–Trustee of an Express Trust for the benefit of Ada Turkish Trask, and Ada Trukish Trask, individually, as Grantor and Beneficiary of that Trust, as beneficiary of an Express Trust established by Jacob Cohen, as beneficiary of the Estate of Jacob Cohen and as a member of the Dora and Jacob Cohen Charitable Foundation, Inc.

v.

Rose **KASENETZ**, Jerrold Kasenetz, John W. Dolrosso, Iver Kasenetz, as personal representatives of the Estate of William Kasenetz, Joel Cohen, Alan Cohen, in his individual capacity and as personal representative of the Estate of Samuel Cohen, Seth Rubinstein, as personal representative of the Estate of Daniel Eisenberg, Harry Rebell, Iver Kasenetz, in his individual capacity, and Gary Freidman.

Nos. 92 CV 4036, 92 CV 4037.

United States District Court, E.D. New York.

May 22, 1997.

Spizz & Cooper, Mineola, NY (Harvey W. Spizz, of counsel), Fried, Frank, Harris, Shriver & Jacobson, New York City (Howard W. Goldstein, Kenneth Applebaum, of counsel), for Plaintiffs.

Schlam Stone & Dolan, New York City (Richard H. Dolan, of counsel), for Alan Cohen and Joel Cohen.

Greenfield, Eisenberg, Stein & Senior, L.L.P., New York City, for William Dasenetz, Daniel Eisenberg, Iver Kasenetz, Gary B. Freidman.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiffs Ada Turkish Trask (Trask) and her son Arthur Turkish (Turkish) brought this action against various family members and their associates alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and state law. The dispute has a twenty-year history and, given the bitterness that attends family disputes over money, seems unlikely to end in this century. The pertinent facts are described in the court's previous orders, see *Trask v. Kasenetz,* 818 F.Supp. 39 (E.D.N.Y.1993); *Turkish v. Kasenetz,* 832 F.Supp. 565 (E.D.N.Y.1993), rev'd, 27 F.3d 23 (2d Cir.1994), as well as in the decision of the Court of Appeals for the Second Circuit, *Turkish v. Kasenetz,* 27 F.3d 23 (2d Cir.1994), familiarity with which is assumed. A summary of those facts is given here.

### I.

In the 1920s, Jacob Cohen and two of his six children, Samuel and Louis, started a business consisting of various corporations and partnerships primarily involved in real estate ventures in New York and Florida (the Family Business). In 1961, he set up a series of inter vivos trusts, in which he placed half of his fifty percent interest in the Family Business. One of these trusts Jacob Cohen created for the benefit of his daughter, Trask (the Cohen–Trask Trust). Trask has since transferred her property in that trust to a trust she created in 1981 with herself as sole beneficiary and her son, Turkish, as trustee (the Trask Trust).

Jacob Cohen died in 1974. His attorney, Daniel Eisenberg, and his son-in-law, William Kasenetz, became co-executors of his estate. In 1975 the estate sold his remaining twenty-five percent interest in the Family Business to Kasenetz and the sons of Samuel Cohen (Jacob Cohen's son), Alan and Joel Cohen. Plaintiffs say that to induce Trask to agree to the sale, Kasenetz and Alan and Joel Cohen fraudulently concealed, among other things, amounts they and Samuel Cohen owed to the Family Business.

In 1979 Trask brought an action in Nassau County Supreme Court to compel an accounting of the Cohen–Trask Trust created by her father. In 1981 Trask brought a federal RICO action in this district alleging that Kasenetz, Samuel Cohen, Alan Cohen, Joel Cohen, and Eisenberg had failed to

make material disclosures to Trask as beneficiary of Jacob Cohen's estate in connection with the 1975 sale of Jacob Cohen's interest in the Family Business.

In 1987 the parties entered into a global settlement agreement to resolve both the state and federal litigation (the Settlement Agreement). In that agreement, Joel Cohen, Alan Cohen, the estate of Samuel Cohen, and Kasenetz represented, based on the advice of accountants, that all loans made by entities in which Trask's trusts had any interest had been fully repaid with interest.

Paragraph 12(E) of the Settlement Agreement provided that: "In the event that the foregoing representations are inaccurate to any extent, then the sole remedy of the Releasors shall be to require William Kasenetz, Alan Cohen, Joel Cohen or the Estate of Samuel Cohen, respectively, to make payment in full of the balance of any such unpaid loans to the extent of their several obligations, together with interest at the rate of six (6%) percent simple interest."

The Settlement Agreement also provided that the estate of Samuel Cohen would pay $1,163,529 to Trask or the Trask Trust; Kasenetz would pay $36,471 to Trask and $520,000 to Spizz & Cooper, Trask's counsel. In exchange, Trask and Turkish agreed to release defendants from all legal claims against them.

Plaintiffs say that in the fall of 1989 they became suspicious that the loans had not been fully repaid as represented. Plaintiffs' accountant examined the books and allegedly discovered a substantial underpayment.

In 1991, shortly after plaintiffs say they discovered the alleged underpayment, Eisenberg offered a deal to Trask and Turkish. He proposed that the Dora and Jacob Cohen Charitable Foundation, Inc. (the Foundation), of which he was a trustee, donate all its assets to an orthodox synagogue in Florida that Trask and Turkish were eager to support. In return Trask and Turkish would release the defendants in this action and others from all legal claims. Trask feared that if she refused the offer she would not be re-elected as Foundation trustee or receive timely distributions from the Cohen–Trask

Trust and the estate of Jacob Cohen. Nevertheless, Trask and Turkish refused the offer.

Several months thereafter, the Foundation's members held an annual meeting and, for the first time in many years, failed to re-elect Trask as trustee.

Kasenetz and Eisenberg, as co-executors of the estate of Jacob Cohen, failed to distribute more than $500,000 in estate assets to Trask until after this action was brought and plaintiffs allege that approximately $1.3 million in liquid assets remaining in the Cohen–Trask Trust have still not been distributed.

## II.

Plaintiffs originally brought two separate actions in New York Supreme Court, Nassau County, against Kasenetz, Joel Cohen, Alan Cohen, the Estate of Samuel Cohen, Eisenberg, Harry Rebell (the family accountant and a trustee of the Cohen–Trask Trust), Iver Kasenetz (Kasenetz's son and a Foundation trustee) and Gary B. Freidman (Eisenberg's law partner and a Foundation trustee).

In the First Action plaintiffs alleged that defendants fraudulently procured the 1987 Settlement Agreement by falsely representing to plaintiffs that they had repaid certain loans. The Second Action alleged that defendants had perpetrated a fraud upon the Foundation in 1991 by proposing the release-for-grant scheme. Both cases alleged RICO violations, 18 U.S.C. §§ 1961–1968, and state law.

On August 24, 1992 defendants removed both actions to federal court. The First Action, 92–CV–4036, was assigned to Judge Denis R. Hurley and the Second, 92–CV–4037, was assigned to this court. By Memorandum and Order dated April 9, 1993 this court dismissed the RICO claims made on behalf of the Foundation, concluding, among other things, that the complaint did not allege that the Foundation had been injured in its "business or property" and in any event, that the single alleged act of attempted extortion did not constitute a "pattern of racketeering activity." The court remanded the

remaining state claims to state court. *Trask v. Kasenetz,* 818 F.Supp. 39 (E.D.N.Y.1993).

On June 7, 1993 the First Action was transferred from Judge Hurley to this court. Plaintiffs moved in both cases to submit a second amended complaint (the Complaint), which in effect consolidated what had previously been two separate RICO claims. By Memorandum and Order dated September 14, 1993 the court found that although plaintiffs had adequately pleaded one predicate act—attempted extortion in connection with the 1991 release-for-grant scheme—the alleged settlement fraud did not constitute a second predicate act because the limitations of liability clause in the 1987 Settlement Agreement precluded plaintiffs from seeking a RICO remedy and because the complaint did not plead scienter with adequate specificity. *Turkish v. Kasenetz,* 832 F.Supp. 565 (E.D.N.Y.1993), *rev'd,* 27 F.3d 23 (2d Cir. 1994).

On June 2, 1994 the United States Court of Appeals for the Second Circuit reversed the judgment of this court and remanded the case for further proceedings. *Turkish v. Kasenetz,* 27 F.3d 23 (2d Cir.1994). The Court of Appeals said that the remedy provided for in the 1987 Settlement Agreement did not bar plaintiffs' settlement fraud claim under RICO and that plaintiffs had adequately pleaded scienter. Thus, because defendants did not dispute that plaintiffs had adequately pleaded attempted extortion, the Complaint alleged a violation of RICO by setting out two predicate acts.

Following the remand, defendants moved for summary judgment. The court held defendants' motion in abeyance pending further discovery. Plaintiffs have now submitted additional evidence in opposition.

### III.

Defendants move for summary judgment on the ground that they relied in good faith on the advice of their accountant when they represented to plaintiffs in the Settlement Agreement that the loans had been repaid. Alternatively, defendants say plaintiffs lack standing because: (1) they have not suffered any present injury, (2) their damages were not proximately caused by the alleged RICO violations, and (3) their injury is derivative. Defendants also say that Eisenberg is not liable under RICO because the rendering of routine legal services does not amount to "participation" in the alleged enterprise.

Under Federal Rule of Civil Procedure 56(c) the court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movants are entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On the motion the court views the record in the light most favorable to the non-movants and resolves all ambiguities and draws all reasonable inferences against the movants. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir. 1987).

### IV.

Defendants say it is undisputed that they relied in good faith on the advice of their accountant, Melvin Springer, when they represented in the Settlement Agreement that the loans had been repaid.

Section 1964(c) of Title 18 provides that:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Thus, a RICO plaintiff must allege: (1) a violation of section 1962, (2) injury to business or property, and (3) that the injury was caused by the violation. *Hecht v. Commerce Clearing House. Inc.,* 897 F.2d 21, 23 (2d Cir.1990).

The complaint alleges that the 1987 settlement fraud was perpetrated with the use of interstate mails and wire communications in violation of 18 U.S.C. §§ 1341, 1343. To violate these statutes, defendants must have intended to deceive plaintiffs, not merely have acted inadvertently or in good faith.

*O'Malley v. New York*, 896 F.2d 704 (2d Cir.1990).

■ Springer and his accounting firm were engaged by defendants in early 1985 to perform an unaudited compilation summarizing the loans defendants owed to the Family Business. Because many of the loans were made without promissory notes, Springer believed that a formal audit would be both difficult and prohibitively expensive.

In his first affidavit Springer says that, according to his compilation, Samuel Cohen repaid the principals and his *pro rata* share of the interest of his outstanding debts to the Family Business. Springer says in his supplemental affidavit that journal entries made by the family's previous accountant, Mac Greenstein, show that William Kasenetz, Joel Cohen and Alan Cohen, in connection with the 1975 sale of Jacob Cohen's twenty-five percent interest in the Family Business, assumed debts totaling $2,015,077. Springer says that according to Greenstein's accounts, this amount was repaid with interest.

But other documents suggest that Springer could not, and did not, assure defendants that all their obligations had been satisfied. In a memorandum to Kasenetz, Alan Cohen and Joel Cohen dated August 21, 1985 Springer wrote that although certain "credits" valuing $1,500,000 had been applied to reduce their debts, those credits could not be accounted for in the books. The memorandum stated that the "missing items are very substantial and should be tracked and cleared up immediately." More than a year later, at a meeting on November 20, 1985, Springer again told defendants that the "assumed credits" did not appear on the books and that it "was incumbent" on them to provide him with information about these credits since his own inquiries had not resolved the issue.

Springer says that he gave Turkish schedules showing the loan balances owed by defendants. The loan balances on these schedules had been reduced by the "missing" credits but, in contrast to the schedules Springer presented to defendants, did not include footnotes disclosing that the credits were "missing". Springer's involvement in

the matter ended soon after the May 1986 meetings.

There is a material issue of fact as to whether defendants knowingly and intentionally deceived plaintiffs when they represented to them in the Settlement Agreement that, based on the advice of their accountants, the loans had been repaid. Summary judgment on this issue is thus inappropriate.

### V.

Defendants say that Eisenberg is not liable under RICO because his activities as defendants' attorney do not constitute participation in the "operation or management" of the alleged RICO enterprise.

It is unclear whether defendants make this claim as a matter of law or as part of their summary judgment motion. Because there is evidence in the record about Eisenberg's role in the alleged enterprises, the court analyzes defendant's argument under the standards governing motions to dismiss and those applicable to summary judgment.

■ To be liable under 18 U.S.C. § 1962(c), a defendant must have participated "in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993). An enterprise may be operated not only by upper management, but also by individuals, although only "associated with" the enterprise, nevertheless "exert control over it[.]" 507 U.S. at 184, 113 S.Ct. at 1173.

■ Generally, an attorney's provision of legal services does not constitute "operation or management" of the alleged enterprise. *See, e.g., Azrielli v. Cohen Law Offices*, 21 F.3d 512 (2d Cir.1994); *Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L.*, 832 F.Supp. 585 (E.D.N.Y.1993). This is true even where an attorney's advice facilitates a client's fraudulent scheme or assists in its concealment. *See Biofeedtrac*, 832 F.Supp. at 591.

■ But where a lawyer's actions are unrelated to representation of a client or demonstrate a direct and independent role in the affairs of the enterprise, such attorney may

be held liable under RICO. *See Napoli v. United States,* 32 F.3d 31 (2d Cir.1994) (criminal RICO convictions upheld where outside counsel for law firm had participated in core activities of enterprise); *In re American Honda Motor Co., Inc. Dealerships Relations Litigation,* 941 F.Supp. 528, 560 (D.Md. 1996); *Crowe v. Smith,* 848 F.Supp. 1258, 1264 (W.D.La.1994).

■ It is true that Eisenberg and his law firm represented Jacob Cohen and defendants Kasenetz, Iver Kasenetz and Freidman. But plaintiffs have alleged that Eisenberg did not act merely as legal counsel. Eisenberg was the Secretary and a trustee of the Foundation as well as co-executor of Jacob Cohen's estate, one of the alleged RICO enterprises.

The Complaint also alleges that in connection with the attempted extortion scheme Eisenberg called Turkish and threatened that if he and Trask did not release all defendants, including Eisenberg, from "every conceivable claim", Foundation funds would not be distributed according to plaintiffs' wishes and, moreover, that plaintiffs would "suffer hostilities". These allegations, if true, would place Eisenberg not in the role of an outside professional but as a direct participant in the affairs of the enterprises.

The facts of record do not resolve the issue. In his affidavit, Eisenberg said that his actions were an amicable attempt to resolve the longstanding intra-family dispute. But Turkish's affidavit says that Eisenberg made explicit threats to him in the course of the phone call that led Turkish to fear that he and Trask would suffer hostilities if the releases were not granted. Moreover, Eisenberg's letter to Turkish dated October 15, 1991 specifically includes the request that plaintiffs release "Daniel Eisenberg, individually, as an Executor and as a Trustee" of all legal claims.

The court cannot conclude from the record that Eisenberg's role was limited to providing legal services or that he had no independent role in the alleged enterprises. Summary judgment on this issue will be denied.

## VI.

Defendants' remaining arguments relate to plaintiffs' standing to sue under RICO. With respect to these contentions, defendants do not present facts beyond the pleadings. Accordingly, the court construes defendants' arguments as a motion to dismiss and deems true the facts in plaintiffs' Complaint. *See Frasier v. Gen. Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). Dismissal will be justified only if it is clear that plaintiffs "can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### A. Injury

■ Defendants say that plaintiffs fail to allege a cognizable injury under RICO. A RICO plaintiff "has standing if, and can only recover to the extent, that he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

■ The amount of damages must be "provable" in order to maintain a RICO claim, *see Commercial Union Assur. Co. v. Milken,* 17 F.3d 608 (2d Cir.1994), and if a plaintiff has an unexplored alternative means of recovery, the RICO action is not considered "ripe." *See First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763 (2d Cir. 1994) (RICO action was not ripe until plaintiff had foreclosed upon loans and the amount of damages became clear and definite).

Defendants rely on *First Nationwide Bank* for the proposition that because plaintiffs have a remedy for the repayment of loans under paragraph 12(E) of the Settlement Agreement, they have not suffered any injury and thus cannot bring a RICO action until they have actually pursued such remedy.

■ But the Second Circuit determined that the Settlement Agreement's remedy in paragraph 12(E) is not an "alternative" for the damages sought in this action. Plaintiffs claim that defendants fraudulently induced them to settle by falsely stating in the 1987 Settlement Agreement that their representation as to repayment of the loans was "based on" the advice of accountants.

Plaintiffs' injury is thus the loss suffered as a result of the alleged fraud, namely, the difference in value between a good faith settlement and a fraudulent settlement. *See Slotkin v. Citizens Cas. Co. of New York,* 614 F.2d 301, 313 (2d Cir.1979) (injury in settlement fraud action is difference in the settlement value before and after the fraud). In essence, plaintiffs are entitled to recover such amount as may "make the settlement an honest one." *DiSabatino v. United States Fidelity & Guaranty,* 635 F.Supp. 350 (D.Del.1986) (quoting *Automobile Underwriters, Inc. v. Rich,* 222 Ind. 384, 53 N.E.2d 775, 777 (1944)).

Here that amount consists of the unpaid loans that defendants purportedly knew had not been repaid when they entered into the 1987 Settlement Agreement with plaintiffs. It does not include those loans of which defendants were, in good faith, unaware. Moreover, it should be noted that the Cohen–Trask Trust, the Trask Trust and the estate of Jacob Cohen share their interests in the Family Business with other family members and trust beneficiaries. Accordingly, the amount of recovery must correspond to the trusts' interest in the Family Business (approximately 6%) and to Trask's right to receive distributions from Jacob Cohen's estate.

Plaintiffs, on behalf of the trusts and Jacob Cohen's estate, may also recover as trebled RICO damages any costs incurred, such as attorneys' fees or accounting expenses, as a direct result of defendants' alleged fraud. *See Stochastic Decisions, Inc. v. DiDomenico,* 995 F.2d 1158, 1166 (2d Cir.1993) (plaintiff entitled to trebled attorney's fees for amount spent to collect state court judgments as a result of defendant's RICO violations). These latter damages are independent of statutory attorney's fees under 18 U.S.C. § 1964(c) and are recoverable only to the extent that plaintiffs prove they are the result of defendants' RICO violations. Plaintiffs have alleged a cognizable injury under RICO.

### B. Proximate Cause

 Plaintiffs must also allege that defendants' RICO violation proximately caused their injury. *See Holmes v. Securi-*

*ties Investor Protection Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 1317, 117 L.Ed.2d 532 (1992). Defendants' RICO violation proximately caused plaintiffs' injury if it was a "substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." *Hecht,* 897 F.2d at 23–24.

Defendants say that because defendants' purported failure to repay the loans actually preceded the alleged settlement fraud, plaintiffs have not alleged proximate cause.

Although the amount of unpaid loans is taken into account in measuring the injury, it does not define it. Thus, the fact that the underlying loan transactions occurred before the alleged fraud is irrelevant. The loss in settlement value was a foreseeable consequence of defendants' alleged misrepresentations and plaintiffs have alleged proximate cause.

### C. Whether plaintiffs suffered a direct injury

Defendants say that plaintiffs also do not have standing because their injury is only a derivative consequence of defendants' purported failure to repay debts owed to the corporations and partnerships making up the Family Business.

 It is true that trust beneficiaries have no standing if the harm suffered by the trust is only an indirect result of injury to another entity. *See Firestone v. Galbreath,* 976 F.2d 279 (6th Cir.1992).

But plaintiffs say, and defendants do not dispute, that at the time defendants made the supposed misrepresentations, a majority of the entities in the Family Business had been liquidated. Any loan payments defendants owed to such entities were payable to the trusts which previously held an interest in these entities. Thus, defendants' alleged misrepresentations in the Settlement Agreement directly caused injury to the trusts and plaintiffs have standing because they now sue on behalf of these trusts.

Defendants may also be suggesting that the named plaintiffs do not have capacity to sue. But Turkish properly sues as trustee of the Trask Trust, and Trask is entitled to sue as beneficiary of the Cohen–Trask Trust because she alleges the trustees are guilty of

wrongdoing and therefore it would be futile to demand they bring an action on the trust's behalf. *See, e.g., Velez v. Feinstein,* 87 A.D.2d 309, 451 N.Y.S.2d 110, 114–15 (1st Dep't, 1982). *See generally* 106 N.Y. Jur.2d § 341. Similarly, Trask can sue as a beneficiary of Jacob Cohen's estate because she names the estate's executors as participants in the alleged RICO enterprises. *See Lawrence v. Cohn,* 932 F.Supp. 564 (S.D.N.Y. 1996) (will beneficiaries have standing in securities fraud action where executor is alleged participant in fraud). As described in part VI(A), *supra,* the amount of recovery, if any, must correspond to the trusts' interest in the Family Business and Trask's right to receive distributions from Jacob Cohen's estate.

## VII.

Defendants' motion for summary judgment and to dismiss plaintiffs' claims as a matter of law is denied.

So ordered.