**Harold E. STRAUB, et al.,
Plaintiffs–Appellees,**

v.

**A P GREEN, INC., et al., Defendants,**

**and**

**Atlas Turner, Inc., a foreign corporation,
Defendant–Appellant.**

No. 92–16204.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 1994.

Decided Oct. 17, 1994.

Paul W. Holloway & Kevin B. Sweeney, Holloway, Odegard & Sweeney, Phoenix, AZ, for defendant-appellant, Atlas Turner, Inc.

Robert George Begam, Dena Rosen Epstein, Begam, Lewis, Marks, Wolfe & Dasse, Paul A. Jozef, Phoenix, AZ, for plaintiffs-appellees, Harold E. Straub, et al.

Before: FARRIS, BEEZER, Circuit Judges, and McLAUGHLIN *, District Judge.

FARRIS, Circuit Judge.

Atlas Turner appeals the district court's denial of its motion to set aside a default judgment. Atlas Turner contends that the district court lacked jurisdiction because service of process was not effective under the Foreign Sovereign Immunities Act. We have jurisdiction of the timely appeal under 28 U.S.C. § 1291. We remand to determine whether Atlas Turner had actual notice in 1986 of the complaint.

## I. BACKGROUND

Plaintiff Harold Straub sued Atlas Turner for asbestos-related injuries. He claims his injuries were caused by exposure to Atlas Turner's products in Arizona (from 1967 to 1968) and in Illinois (from 1948 to 1959) while he was employed by Armstrong Contracting & Supplying Company. He mailed a copy of the summons and complaint in the English language by registered mail, return receipt requested, to Atlas Turner in Montreal, Quebec, Canada. The mail receipt was signed by "C. Benoit" and returned to Straub.

Atlas Turner did not respond to the suit. A default judgment was entered against it on April 1, 1991. Atlas Turner's motion to set aside the judgment for lack of jurisdiction was denied by the district court on May 27, 1992. Atlas appeals. We review *de novo*.

* The Honorable Linda Hodge McLaughlin, United States District Judge for the Central District of California, sitting by designation.

*Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990 (9th Cir.1994). The district court's findings of fact relevant to its determination of subject matter jurisdiction are reviewed for clear error. *Id.*

## II. APPLICABILITY OF FOREIGN SOVEREIGN IMMUNITIES ACT

◼ To determine whether Straub's service of process was effective, we must initially decide whether the Foreign Sovereign Immunities Act applies. The FSIA applies to lawsuits against "foreign states." 28 U.S.C. § 1602. The term foreign state includes an "agency or instrumentality of a foreign state."[1] The facts are undisputed. At the time Straub filed his lawsuit, Atlas Turner was fully owned by Societe Nationale de L'Amiante, a Crown Corporation of the Province of Quebec. It was therefore an instrumentality of a foreign state. It is not disputed that Atlas Turner was not a foreign state at the time Straub was exposed to the asbestos.

◼ Straub contends that the FSIA does not apply because Atlas Turner was not an instrumentality of Quebec at the time of the acts giving rise to this lawsuit. We reject the argument. Without directly addressing the issue, we have applied the FSIA to cases in which foreign governments acquired control over private entities after the conduct underlying the lawsuit has occurred. *See West v. Multibanco Comermex, S.A.*, 807 F.2d 820, 823 (9th Cir.), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2483, 96 L.Ed.2d 375 (1987). In *Wolf v. Banco Nacional de Mexico, S.A.*, 739 F.2d 1458, 1460 (9th Cir.1984), *cert. denied*, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985), the court went even further, and implied that the FSIA may be applicable if a party that becomes a "foreign state" after the commencement of a lawsuit promptly brings its status as a "foreign state" to the district court's attention.

Straub's reliance on cases from other circuits does not support his argument. The Sixth and Eighth Circuits have held that the FSIA is applicable where a defendant is a foreign state at the time of the alleged wrongdoing. *See General Elec. Capital Corp. v. Grossman*, 991 F.2d 1376 (8th Cir. 1993); *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445 (6th Cir.1988). Neither court addressed the issue of whether the FSIA applies when a party is not a foreign state at the time of the alleged wrongdoing but becomes one prior to the date on which the lawsuit is filed. Straub's argument derives some support from *In re Chase & Sanborn Corp. v. Granfinanciera*, 835 F.2d 1341, 1347–48 (11th Cir.1988), *reversed on other grounds*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), where the court held that the defendant "was not an instrumentality of the Colombian government at the time of the transactions and thus would not be protected by the provisions of FSIA." However, in *Granfinanciera* the court also took into account the fact that the plaintiffs filed their lawsuit *before* the defendant was nationalized by the Colombian government. *See id.* at 1347 ("FSIA is inapplicable to the case at bar because the transfers in question *and the suit to recover those transfers* occurred before Granfinanciera was nationalized.") (emphasis added). Unlike *Granfinanciera*, Straub filed his lawsuit *after* Atlas became a "foreign state." Straub has cited no precedent holding that a party that is a foreign state when the litigation commences is not entitled to the protections of the FSIA. We have found none. We hold that the FSIA applies when a party is a foreign state at the time the lawsuit is filed, even if that party was not a foreign state at the time of the alleged wrongdoing.

---

1. An "agency or instrumentality of a foreign state" is defined in subsection (b) as any entity—
 (1) which is a separate legal person, corporate or otherwise, and
 (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
 (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.
 28 U.S.C. § 1603(b).

### III. SERVICE OF PROCESS REQUIREMENTS UNDER THE FSIA

If the FSIA is applicable, Atlas Turner recognizes that it is not entitled to immunity from suit because one of the exceptions to foreign sovereign immunity in § 1605 applies. It also recognizes that it has minimum contacts with the relevant geographical area, the United States. *Meadows v. Dominican Republic,* 817 F.2d 517, 523 (9th Cir.) (relevant geographical area for evaluating a party's contacts under the FSIA is "the entire United States, not merely [the forum state]"), *cert. denied,* 484 U.S. 976, 108 S.Ct. 486, 98 L.Ed.2d 485 (1987). Atlas Turner argues instead that we should set aside the default judgment because Straub did not properly serve Atlas Turner with either the summons and complaint or a copy of the default judgment.

#### A. Service of the Summons and Complaint

#### 1. Service under § 1608(b)(2).

■ Section 1608(b)(2) provides that if no special arrangement for service between the parties exists, service may be effected by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents.

The district court ruled that Straub had complied with the service requirements of § 1608(b)(2). The basis for the court's ruling was that (1) Atlas was served in accordance with the Hague Convention and (2) both Canada and the United States are signatories to the Hague Convention. Canada, however, did not become a signatory to the Hague Convention until May 1, 1989 [2]; Atlas was allegedly served in 1986. Thus, the district court's ruling cannot be affirmed on the basis of compliance with the Hague Convention.

Straub asserts that service was effected in compliance with the first clause of § 1608(b)(2). He contends that the phrase "any other agent authorized by appointment or by law to receive service of process in the United States" refers to a class of agents who have the general authority to receive service of process in the United States but who are not necessarily in the United States at the time they are served.

■ Although Straub's interpretation of the statute is certainly plausible, it is also plausible that Congress meant for the modifying phrase "in the United States" to apply to the "by delivery" language. When interpreting a statute, we ordinarily first look to the plain meaning of the language used by Congress. *See Whilshire Westwood Assocs. v. Atlantic Richfield,* 881 F.2d 801, 803 (9th Cir.1989). But if the statute is ambiguous, we consult the legislative history, to the extent that it is of value, to aid in our interpretation. *Stanton Rd. Assocs. v. Lohrey Enters.,* 984 F.2d 1015, 1019 (9th Cir.1993). Because of the ambiguity in the plain meaning of the language, we examine the legislative history and the structure of § 1608. The House Report makes abundantly clear that "subsection (b)(2) ... provides for service upon ... agents in the United States of the agency or instrumentality." *See* 1976 U.S.Code Cong. & Ad.News 6604, 6624. Further, § 1608(b)(3), which applies if service cannot be made under subsections (b)(1) and (b)(2), establishes a procedure for serving an instrumentality of a foreign state in a foreign country. One of the requirements of § 1608(b)(3) is that a copy of the complaint be translated into the official language of that country. *See* 28 U.S.C. § 1608(b)(3). The translation requirement in § 1608(b)(3) would have little meaning if parties could circumvent it by claiming they served an "authorized agent" in the foreign country pursuant to § 1608(b)(2).

Thus, we hold that the first clause of § 1608(b)(2) only authorizes service of process in the United States. Straub did not serve an authorized agent in the United

**2.** Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, May 1, 1989, Treaty Series, No. 2, Canada, 1989.

States, and therefore service of process was not effective under § 1608(b)(2).

### 2. Service under § 1608(b)(3)

Straub also contends that he properly served Atlas under § 1608(b)(3). That section provides that if service cannot be made under subsections (b)(1) and (b)(2), service can be effected

> if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—
>
> . . . .
>
> (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served. . . .

28 U.S.C. § 1608(b)(3).

Straub did not strictly comply with section 1608(b)(3). Although Straub wrote his complaint in English, one of the official languages of Canada,[3] the complaint was not dispatched by the clerk of the court. Thus, we must decide whether Straub's failure to have the complaint dispatched by the clerk of the court renders service ineffective.

■■■■ Courts in other circuits have rejected a strict reading of § 1608(b)(3), and have upheld service where the serving party "substantially complied" with the FSIA, even though the complaint was neither translated nor dispatched by the clerk of the court. *See Sherer v. Construcciones Aeronauticas, S.A.,* 987 F.2d 1246 (6th Cir.) (omission of translation of complaint did not warrant dismissal), *cert. denied,* — U.S. —, 114 S.Ct. 72, 126 L.Ed.2d 41 (1993); *Banco Metropolitano v. Desarrollo de Autopistas y Carreteras de Guatemala,* 616 F.Supp. 301, 304 (S.D.N.Y. 1985) (complaint not translated and not dispatched by clerk); *Obenchain Corp. v. Corporation Nacionale de Inversiones,* 656 F.Supp. 435 (W.D.Pa.1987) (complaint not dispatched by clerk of court). When apply-

ing the substantial compliance test, the pivotal factor is whether the defendant receives actual notice and was not prejudiced by the lack of compliance with the FSIA. *See id.; see also Harris Corp. v. National Iranian Radio and Television,* 691 F.2d 1344 (11th Cir.1982); *Velidor v. L/P/G Benghazi,* 653 F.2d 812 (3d Cir.1981), *cert. dismissed,* 455 U.S. 929, 102 S.Ct. 1297, 71 L.Ed.2d 474 (1982). Atlas Turner erroneously contends that courts upholding service based on substantial compliance with the FSIA have required a showing of "exigent" circumstances. Although exigent circumstances were present in *Harris* (the Iranian revolution), they were absent in both *Sherer* and *Banco Metropolitano,* the two most analogous cases. Similarly, in the context of the Federal Rules of Civil Procedure we have held that "substantial compliance" with the service requirements of Rule 4 is sufficient so long as the opposing party receives sufficient notice of the complaint. *See Chan v. Society Expeditions, Inc.,* 39 F.3d 1398, 1404 (9th Cir.1994); *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.,* 840 F.2d 685, 688 (9th Cir.1988).

■■■■ We formally adopt a substantial compliance test for the FSIA. This holding is consistent with our recent decision in *Gerritsen v. Consulado General de Mexico,* 989 F.2d 340, 345 (9th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993). In *Gerritsen* we held that a plaintiff failed to perfect service under § 1608(a)(3) because he did not serve the Mexican Consulate with a Spanish translation of the complaint. Failure to deliver a complaint in the correct language is such a fundamental defect that it fails both a "strict compliance" test and a "substantial compliance" test.

■■■■ Applying the substantial compliance test, Straub's failure to dispatch the complaint by the clerk of the court did not per se deprive the district court of jurisdiction. The substantial compliance test, however, is satisfied only if Atlas Turner re-

---

3. The official languages of Canada are English and French. Can. Const. (Constitution Act, 1982) pt. I (Canadian Charter of Rights and Freedoms), § 16. Moreover, the Canadian Constitution provides that either French or English may be used in the courts of Quebec. Can. Const. (British North America Act, 1867), § 133.

ceived actual notice of the lawsuit. The burden of proving actual notice remains with Straub. *See Hirsch v. Blue Cross, Blue Shield,* 800 F.2d 1474, 1477 (9th Cir.1986) (stating that plaintiff has the burden of establishing jurisdiction).

 The summons and complaint were received on September 22, 1986, at Atlas Turner's corporate headquarters and signed for by "C. Benoit." The district court concluded that Atlas Turner had actual notice of the summons and complaint because Atlas Turner's attorneys contacted the district court about the status of the case prior to the entry of default judgment on April 1, 1991. This is insufficient to establish actual notice. We recognize that the district court could have taken judicial notice of communications between it and Atlas Turner's attorneys under Federal Rule of Evidence 201. However, Rule 201 requires that a "judicially noticed fact must be one not subject to a reasonable dispute in that it is . . . (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The only "source" to which we could turn to verify the accuracy of the district court's statement that it received communications from Atlas Turner's attorneys prior to April 1, 1991, is the district judge himself. The problem with the court's conclusion is that Atlas Turner's contacts with the court prior to April 1991 are not inconsistent with Atlas Turner's claims that it had no notice of the summons and complaint mailed *in 1986.* That Atlas Turner contacted the court in 1990 or 1991 indicates only that it became aware of the default proceedings at some time prior to its contact. This falls far short of a showing of actual notice of the complaint mailed in 1986. By 1990, the deadline for filing an answer to Straub's complaint had long since passed.

 Straub has not satisfied his burden of proving actual notice. Because actual notice was not the dispositive issue before the district court, however, we remand for further consideration of the issue. In so doing we do not ignore the fact that service "by clerk of the court" would have probably resulted in a proper return of service.

Straub's problem with proof, if any, is of his own making.

### B. Service of a copy of the default judgment

Atlas Turner contends that it was not served with a copy of the default judgment pursuant to § 1608(e) of the FSIA. Section 1608(e) provides:

No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court. A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner described for service in this section.

The district court held that Straub was not required to serve notice of the default judgment on Atlas Turner. The court noted that the second sentence of § 1608(e), which requires service of a copy of the default judgment, refers only to a "foreign state or political subdivision," whereas the first sentence of § 1608(e) refers to "a foreign state, a political subdivision thereof *or* an agency or instrumentality of a foreign state." The court reasoned that Atlas Turner was not entitled to service of the default judgment because the second sentence of § 1608(e) makes no reference to an "instrumentality of a foreign state."

 We agree. Section 1603(a) makes clear that the term foreign state includes instrumentalities of foreign states *except as used in section 1608.* 28 U.S.C. § 1603(a). Thus, when the term foreign state is used in § 1608, it does not encompass instrumentalities of foreign states. *But see LeDonne v. Gulf Air, Inc.,* 700 F.Supp. 1400, 1414 (E.D.Va.1988) (setting aside default judgment partly on the basis of plaintiff's failure to serve instrumentality of foreign state with copy of default judgment). Although Atlas Turner's argument gains some support from the legislative history, resort to the legislative history is not necessary when the language of the statute is not ambiguous. *See Brooker v. Desert Hosp. Corp.,* 947 F.2d

 

412, 414 (9th Cir.1991). Atlas Turner did not need to be served with a copy of the default judgment.

## IV. CONCLUSION

We hold that Straub's failure to dispatch the summons and complaint by the clerk of the court did not per se deprive the district court of jurisdiction, but we REMAND for a determination of whether Atlas Turner had actual notice of the complaint in 1986. If not, the matter is at an end. If so, the default was proper and judgment may enter. Each side shall pay its own costs.

**REMANDED.**