Revised August 24, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No.  97-30572

---

NANCY G. PERÉ, on behalf of Marci Danielle Peré,
on behalf of Matthew Reed Peré, individually and
on behalf of her minor children,

Plaintiff-Appellee,

VERSUS

NUOVO PIGNONE, INC., et al.,

Defendants-Appellants,

VERSUS

COPPUS ENGINEERING; TUTHILL CORPORATION,

Defendants-Appellees.

---

Appeal from the United States District Court
For the Western District of Louisiana

August 7, 1998

Before POLITZ, Chief Judge, JONES, and DUHÉ, Circuit Judges:

JOHN M. DUHÉ, JR., Circuit Judge.

Appellee's husband was killed while working on a platform off the coast of West Africa when a starter turbine manufactured by Coppus Engineering exploded.  The starter turbine was a component of a turbine system designed and manufactured by Nuovo Pignone. Appellee sued for her husband's wrongful death claiming that the

starter turbine and turbine system had been improperly designed and/or manufactured. Appellant, Nuovo Pignone, an Italian company, claimed sovereign immunity under the Foreign Sovereign Immunities Act. 28 U.S.C. § 1602, et seq. The district court found that, although Appellant was a foreign state, the commercial activity exception to immunity applied and Appellant could be sued. We disagree, holding that the Appellee failed to meet her burden of proof that the commercial activity exception applied.

## I.

In 1974, Nuovo Pignone, an Italian company that designs and manufactures turbine systems, bought a starter turbine from Coppus Engineering, a United States company. Nuovo Pignone then sold to Cabinda Gulf Oil Company ("CABGOC"), FOB Italy, a turbine system that incorporated the Coppus starter turbine. Nuovo Pignone manufactured, tested, and inspected the turbine system in Italy. It was then sent to Bayou Black, Louisiana for final assembly by CABGOC's contractor onto a platform. The completed platform was sent to CABGOC in the Molongo field off the coast of Angola, West Africa.

In 1993, Marcus Daniel Peré ("Peré") was employed by Chevron Overseas Petroleum and/or CABGOC as an instrument technician in West Africa. Peré's employer ordered him to a gas injection platform to test the gas turbine system. During the test, the

2

starter turbine exploded killing Peré.  Peré's widow sued[1] on behalf of herself and her two children claiming that the Coppus turbine and Nuovo Pignone's turbine system caused Peré's death because they had been defectively designed and/or manufactured.

Nuovo Pignone moved for summary judgement claiming sovereign immunity by contending it was an agent or instrumentality of the Italian government.  It established that Ente Nazionale Idrocaburi ("ENI") was the majority shareholder at the time of the accident and that the Republic of Italy created ENI to lead Italy's oil and gas exploration and development.  Thus, Nuovo Pignone argued, because ENI is an agent or instrumentality of the Italian government, it was a foreign state entitled to immunity.  The district court agreed.  It, however, denied Nuovo Pignone's request for dismissal concluding that Nuovo Pignone was not entitled to sovereign immunity because of its commercial activities in the United States.  Nuovo Pignone appeals.

## II.

The Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1602 et. seq., provides the sole basis for obtaining jurisdiction over a foreign state. <u>Argentine Republic v. Amerada Hess Shipping Co.</u>, 488 U.S. 428, 4443 (1989).  The FSIA includes

---

[1] Coppus Engineering is also suing; however, it is doing so to ensure that Nuovo Pignone remains a party to the litigation.  To avoid confusion, this opinion will treat Coppus' arguments as Peré's.

agents or instrumentalities[2] of a foreign state within the definition of "foreign state". To bring suit, the plaintiff must establish that one of the exceptions listed in §§ 1605 and 1607 applies. This Court must decide whether Nuovo Pignone is a foreign state, and if it is, whether it may still be sued under the commercial activity and implicit waiver exceptions, see § 1605(a)(1), (2) infra.

## A. STANDARD OF REVIEW

We review a district court's application of the FSIA de novo. Tubular Inspection, Inc. v. Petroleos Mexicanos, 977 F.2d 180, 184 (5th Cir. 1992).

## B. ANALYSIS

### 1. Whether the FSIA Applies

Peré argues that the district court erred in applying the FSIA because it looked to Nuovo Pignone's ownership at the time the explosion occurred, rather than at the time suit was filed. When

---

[2]28 U.S.C. § 1603(a), (b)(1), (b)(2) provide:
(a) A "foreign state". . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity-
(1) which is a separate legal person, corporate or otherwise, and
(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof[.]

4

Peré sued, Nuovo Pignone was no longer a foreign state because ENI had transferred a majority of the Nuovo Pignone stock to a consortium of private companies. In support of her argument, Peré cites F. Straub v. A.P. Green, 38 F.3d 448 (9th Cir. 1994) which looked at the defendant's identity at the time suit was filed. She acknowledges that General Electric Corp. v. Grossman, 991 F.2d 1376 (8th Cir. 1993) holds that whether an entity qualifies as a foreign sovereign is determined at the time the litigated event occurred. Peré contends, however, that the Straub court's reasoning is better because it is more in keeping with the FSIA's legislative history.

The FSIA's purpose was to promote harmonious international relations. Pullman Construction Industries, Inc. v. United States, 23 F.3d 1166, 1169 (7th Cir. 1994). Peré argues that generally international relations would remain unaffected when a plaintiff sues an entity which was immune at the time of the disputed event but is now private, therefore, giving Nuovo Pignone immunity does not achieve any governmental purpose. We disagree.

Whether the FSIA covers an entity now private that was state owned at the time of the disputed event(s) is an issue of first impression within this Circuit. Having studied both Straub and General Electric, we are persuaded by the Eighth Circuit's reasoning in General Electric. As the Eighth Circuit stated, "the doctrine of foreign state sovereign immunity was created to effectuate general notions of comity among nations." Id. at 1381

5

(internal quotations and citations omitted).  The foreign policy concerns underlying sovereign immunity do not necessarily disappear when a defendant loses its foreign status before suit is filed. Thus, courts are to look to the defendant's status at the time the litigated events occurred.  Straub is distinguishable because it addresses different facts.   In Straub, the Ninth Circuit was determining how to treat a corporation that became a foreign state for FSIA purposes after the disputed events occurred but before suit was filed.[3]  Straub, 38 F.3d at 451.  We, therefore, affirm the district court's finding that Nuovo Pignone is a foreign state under the FSIA.

## 2. FSIA Exceptions

### a. Commercial Activity

The district court found that the "commercial activities" exception to the FSIA applied.  Under § 1605(a)(2), a foreign state is not immune when the action is:

> "based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."

"Commercial activity" is defined as "a regular course of commercial conduct or a particular commercial transaction or act."  28 U.S.C.

---

[3]This opinion does not address such a situation.

§ 1603(d). In determining the commercial character of an activity, courts look to the nature rather than the purpose of the act or transaction. Id. For the commercial activity exception to apply here, Nuovo Pignone's actions must fall within the second listed exception. In other words, the suit must be "based upon . . . an act performed within the United States in connection with a commercial activity of the foreign state elsewhere". The district court correctly found that the commercial activity upon which the plaintiff's cause of action was based was the design and manufacture of turbine systems. It further found that the act performed in the United States in connection with that activity was Nuovo Pignone's sending a representative to Bayou Black to consult in the final assembly of the system onto the platform. We disagree.

We turn first to the issue of each party's burden of proof. Initially, the party seeking immunity must show the district court that it is a foreign state potentially entitled to immunity under the FSIA. Once that party makes such a showing, the burden shifts to the opposing party to raise the exceptions to sovereign immunity and to assert facts that would establish these exceptions. The ultimate burden of proving that the FSIA applies, though, remains upon the party seeking immunity. Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General del Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana, 923 F.2d 380, 390 n. 14 (5th Cir. 1991); Arriba Ltd. v. Petroleos Mexicanos, 962

F.2d 528, 533 (5th Cir. 1992). Here, Nuovo Pignone has proven that it is a foreign state entitled to immunity; thus, the burden has shifted to Peré to prove that Nuovo Pignone performed an act within the United States in connection with the commercial activity performed elsewhere. Peré asserts that Nuovo Pignone's sending representatives to Bayou Black, Louisiana to consult on the final assembly was such an act. Assuming arguendo that the consultation was a commercial act performed within the United States, Peré still fails to meet her burden of proof.

To determine whether the availability to consult during the Bayou Black assembly was in connection with Nuovo Pignone's design/manufacture in Italy, we look to our prior cases to find the definition of "in connection with". In Stena, we held that the connection between the commercial activity and the plaintiff's complaint had to be material. Id. at 387. However, when the "in connection with" prong applies, "any material connection between 'commercial activity elsewhere' and the plaintiff's complaints. . . is irrelevant to the determination of subject matter jurisdiction." Id. at 388. Under this prong, the material connection must exist between the act performed in the United States and plaintiff's cause of action. Here, then, the material connection must exist between the availability for consultation during final assembly in Bayou Black and Peré's allegations of wrongful death due to improper design and/or manufacture. Peré fails to show such a material connection. The components of the

8

turbine system were manufactured, tested, and delivered to CABGOC in Italy. More importantly, once the components arrived in Bayou Black, Nuovo Pignone did not perform the final assembly; rather, it was CABGOC's contractor who performed this task. Concededly, Nuovo Pignone did send representatives to consult on the mechanical erection of the components onto the platform; however, there is no indication in the record concerning the extent or nature of the consultation or to show it as an integral part of the design or manufacture. While this Court is told that the Nuovo Pignone representatives consulted, we are left to guess at what the consultation involved. There is simply no indication that the final assembly in Bayou Black was a part of the design or manufacture that occurred in Italy. Thus, we cannot say that there is a material connection between Nuovo Pignone sending consultants to Bayou Black and Peré's wrongful death action.

**b. Waiver**

Peré argues that the district court did not have to consider the commercial activity exception because Nuovo Pignone has implicitly waived its immunity. The FSIA allows a foreign state to waive its immunity either explicitly or implicitly, 28 U.S.C. § 1605(a)(1), but it does not state how implicit waiver occurs. The legislative history reveals, though, that implicit waiver may be found in three situations: 1) when a foreign state agrees to arbitration in another country; 2) when a foreign state agrees that

9

the laws of another country govern a contract; and 3) when a foreign state files a responsive pleading without raising the immunity defense. H. Rep. No. 1487, 94th Cong. 2d Sess. 18, reprinted in 1976, U.S.C.C.A.N. 6604, 6617. See also, Arriba Ltd.,962 F.2d at 539 n. 22. The waiver exception is to be narrowly construed. Joseph v. Office of the Consulate General of Nigeria, 830 F.2d 1018, 1022 (9th Cir. 1987).

Here, Peré argues that Nuovo Pignone implicitly waived its sovereign immunity by virtue of a 1985 contract it made with CABGOC. That contract concerned the overhaul of the FC-1C compressor train that included the starter turbine that exploded. In provision 19 of that contract, Nuovo Pignone agreed that the laws of Texas would govern questions concerning the performance or execution of the overhaul contract. Peré contends that this provision is an implied waiver. We disagree.

First, in cases in which implied waiver based upon a contract has been found, the contract was between the parties suing and being sued. See Eckert International v. The Government of the Sovereign Democratic Republic of Fiji, 32 F.3d 77 (4th Cir. 1994); Joseph v. Office of the Consulate of Nigeria, 830 F.2d 1018 (9th Cir. 1987); Kramer v. Boeing, Co., 705 F. Supp. 1392 (D. Minn. 1989). That is not the case here. Moreover, when courts analyze whether a contract's choice of law provision constitutes implicit waiver, they look to the implied intent of the parties. See Eckert Int'l, 32 F.3d at 80. Having studied the 1985 agreement, we find

10

no implied intent of Nuovo Pignone to be responsible to third parties. Hence, Nuovo Pignone has not impliedly waived its sovereign immunity.

## CONCLUSION

For the reasons stated, we AFFIRM IN PART, REVERSE IN PART and REMAND.