Gretchen VASURA, Plaintiff,

v.

ACANDS, et al., Defendants.

No. 99 Civ. 9429(CSH).

United States District Court, S.D. New York.

Feb. 24, 2000.

---

Early & Strauss, New York City, Mark R. Bibro, of counsel, for plaintiff.

Barry, McTiernan & Moore, New York City, Suzanne Halbardier, of counsel, for defendant Acands, Inc.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

### I. *Procedural Background*

The complaint at bar was initially filed on February 10, 1999 in New York Supreme Court, alleging that plaintiff suffered personal injury as the result of exposure to asbestos. On September 1, 1999, Atlas Turner, Inc., one of the many defendants, filed a notice of removal to this Court asserting two independent grounds for removal: (1) diversity of citizenship and (2) Atlas Turner's status as a "foreign state" within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603(a). The first ground implicates 28 U.S.C. § 1441(a), which allows the removal of actions over which district courts have original jurisdiction. In asserting the latter ground, Atlas Turner, once owned by an arm of the Canadian government, implicitly invokes the provisions of 28 U.S.C. § 1441(d), which allows the removal of "[a]ny civil action brought in a State court against a foreign state as defined in § 1603(a)".

On October 14, 1999, plaintiff moved to remand this case to New York Supreme Court chiefly on the basis of lack of subject matter jurisdiction.[1] Plaintiff argues that (1) diversity jurisdiction does not lie because plaintiff and one of the defendants, Georgia Pacific, are both citizens of Georgia; (2) removal on the basis of diversity was prohibited in any event by 28 U.S.C. § 1441(b) because at least one of the defendants, Rapid–American Corporation, is a New York corporation; and (3) jurisdiction is not furnished by the FSIA because Atlas Turner did not have the status of a foreign state either at the time this lawsuit was filed or at the time the underlying events occurred.

While the remand motion was *sub judice*, the Judicial Panel on Multidistrict Litigation (the "MDL Panel") transferred this

---

1. Plaintiff also contended that the removal was untimely, a proposition Atlas Turner dis-
putes. In the view I take of the case, I need not reach this issue.

case to Judge Charles R. Weiner of the Eastern District of Pennsylvania for discovery purposes. Because of uncertainty over whether I retained the authority to decide the motion, I held a conference with counsel for plaintiff and Atlas Turner on December 14, 1999. At the conference, I informed counsel of my intention to confer with Judge Weiner about sending the case back to this Court for the purpose of deciding the motion. Judge Weiner quite properly referred that question to the MDL Panel, which on January 5, 2000 vacated its prior transfer order to allow this Court to decide Vasura's motion to remand. Accordingly, the case is properly before me for resolution of the motion.

## II. *Removal Standards*

 Pursuant to the federal removal statute, a case originally filed in state court may be removed to federal court if it presents a claim over which the federal court has original jurisdiction or a claim against a "foreign state" as defined in the FSIA. *See* 28 U.S.C. § 1441(a), (d). The statute permits a plaintiff, if so advised, to seek remand of the case to state court on the ground that subject matter jurisdiction does not exist or because of a defect in the removal procedure. 28 U.S.C. § 1447(c). In resolving a motion to remand, courts must be mindful of considerations of federalism and the limited jurisdiction conferred on subject matter jurisdiction courts and should "strictly construe[ ]" the federal removal statute, resolving all doubts "in favor of remand." *Miller v. First Security Investments, Inc.,* 30 F.Supp.2d 347, 350 (E.D.N.Y.1998) (internal quotation marks omitted). The party invoking the Court's removal jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to remand. *United Food & Commercial Workers Union, Local 919, AFL—CIO v. CenterMark Properties,* 30 F.3d 298, 301 (2d Cir.1994).

As noted, defendant Atlas Turner identified two alternate bases for removal in its notice: its "foreign state" status as conferred by the FSIA and diversity of citizenship. If this Court has jurisdiction on either ground, removal was proper. Plaintiff argues that neither ground furnishes the requisite jurisdiction over this case. To determine whether remand is necessary, I will consider whether Atlas Turner has established original jurisdiction under the FSIA, and if not, whether complete diversity nonetheless rendered the removal valid.

## III. *"Foreign State"*

Pursuant to the FSIA, this Court has original jurisdiction over civil actions filed against a "foreign state." 28 U.S.C. § 1330(a). As defined by that statute, a "foreign state" includes an "agency or instrumentality" of a foreign state, which in turn includes an entity a majority of whose shares are owned by a foreign state or a political subdivision thereof. 28 U.S.C. § 1603(a), (b). It is common ground that from 1980 to 1989, Atlas Turner was owned by Societe Nationale de l'Amiante, an arm of the Canadian government. Thus there does not appear to be any dispute that between 1980 and 1989 Atlas Turner was a "foreign state" within the meaning of the FSIA. The instant debate instead centers upon whether Atlas Turner was a "foreign state" during a time that is relevant to the underlying claims at bar.

The controlling time period for purposes of assessing whether a defendant is entitled to invoke the FSIA has not yet been determined by the Second Circuit, and the issue is unsettled in other circuits as well. The few circuits that have resolved the question have reached two different conclusions. The Ninth Circuit has suggested that the defendant's status as an agency or instrumentality of a foreign government *at the time the lawsuit was filed* is determinative. *See Straub v. A.P. Green, Inc.,* 38 F.3d 448, 451 (9th Cir.1994). Others have held that the relevant time period for ascertaining foreign state status is that in which *the conduct at issue took place. See General Electric Capital Corp. v. Grossman,* 991 F.2d 1376, 1380–82 (8th Cir. 1993); *Gould, Inc. v. Pechiney Ugine*

*Kuhlmann,* 853 F.2d 445, 450 (6th Cir. 1988); *Pere v. Nuovo Pignone, Inc.,* 150 F.3d 477, 480–81 (5th Cir.1998), *cert. denied* 525 U.S. 1141, 119 S.Ct. 1033, 143 L.Ed.2d 42 (1999). *See also Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 39–40, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (recognizing differing views among the circuits on when status is determined for purposes of invoking FSIA jurisdiction, but leaving "for another day" resolution of the issue).

One court in this district has reconciled the two views and concluded that "the correct approach under the FSIA is to ask whether the underlying conduct took place on the foreign state's watch, even if that state is no longer in control of the party by the time of the lawsuit, or, alternatively, whether the defendant [is] currently a foreign state, regardless of its status at the time of the underlying conduct." *Belgrade v. Sidex Int'l Furniture Corp.,* 2 F.Supp.2d 407, 414 (S.D.N.Y.1998) (Kaplan, J.); *but see Daly v. Castro Llanes,* 30 F.Supp.2d 407, 419 (S.D.N.Y.1998) (Schwartz, J.) (decisive focus for FSIA purposes is "on the status of the foreign entity at the time of the alleged acts, not at a later or earlier date"). To resolve the current motion, I need not decide which, if not both, of the time periods that have been identified under the two approaches governs, because Atlas Turner does not meet the test under either.

Without question Atlas Turner was not a foreign state in 1999 when this lawsuit was filed, having been sold a decade earlier by Societe Nationale de l'Amiante. Thus, if the litmus test is the date of filing, the FSIA would clearly not apply in this case.

▪ Assuming the analysis turns instead on the defendant's status at the time the underlying events occurred, the question becomes whether the conduct giving rise to Atlas Turner's alleged liability took place during the time it was owned by the Canadian government—between 1980 and 1989. That particular inquiry is implicated by the provisions in 28 U.S.C. § 1605(a)(2) that § 1604's general immunity of a foreign state from American jurisdiction (federal or state) does not apply to an action which "is based upon a commercial activity carried on in the United States *by the foreign state.*" (Emphasis added). The complaint in this case alleges that plaintiff developed the severe malady of mesothelioma as a result of her exposure to asbestos both at her home and at her place of work, Café Geiger in New York City. But the complaint is silent as to the dates of her alleged exposure. Pointing to her deposition testimony, however, plaintiff Vasura more precisely identifies the relevant time frame. She avers, consistent with her testimony, that the "installation and exposure to the asbestos-containing products occurred in 1969" during the renovation of Café Geiger.[2] Plaintiff's Reply Brief at ¶ 2. Therefore, contending that the "injurious tort that occurred to [Vasura] transpired in 1969," plaintiff seeks "leave to amend ¶ 5 of the Complaint to state that Ms. Vasura was exposed to asbestos-containing materials in 1969." *Id.* at ¶ 3.

Atlas Turner does not offer any evidence to demonstrate that plaintiff's alleged exposure occurred at any time other than in 1969. Instead, the defendant contends that its liability cannot be circumscribed to 1969, the year of exposure, because the complaint's broad allegations include charges that beginning in the 1920s and continuing to the present Atlas Turner knew of the dangerousness of asbestos and violated its duty to warn of its dangers. Atlas Turner thus argues that the complaint alleges a continuing violation that encompassed the period it was owned by Societe Nationale de l'Amiante. This argument is unpersuasive. While the knowledge of asbestos' dangerousness and the duty to warn the plaintiff of that danger

2. At the December 14, 1999 motion conference, counsel for plaintiff advised the Court that the complaint's reference to exposure at plaintiff's "home" in paragraph 12 was a mistake, apparently resulting from wording left over from a previous unrelated complaint.

may be relevant to defendant's liability in this case, those factors come into play, if at all, only prior to and during the plaintiff's *exposure* to asbestos for which defendant is responsible. Knowledge achieved or warnings given after the exposure come too late. The relevant time frame for the liability, including that arising from a duty to warn, logically flows backwards from the time of exposure.

In the case at bar, the deposition testimony, unrefuted by Atlas Turner, narrows the window of plaintiff's exposure to the summer of 1969, when Café Geiger underwent renovations during which plaintiff was present. In order to establish the time frame, plaintiff's counsel has offered to amend the complaint to limit the window of exposure to 1969, thereby precluding plaintiff from arguing that the liability arose in any year thereafter. With the liability so temporally confined, there can be no serious contention that the FSIA applies here. Atlas Turner was not owned by Societe Nationale de l'Amiante during either of the potentially controlling time periods for FSIA purposes. It was not acquired by that entity until eleven years after the exposure allegedly occurred, and was sold ten years before this lawsuit commenced. Given the narrow construction I am admonished to afford the removal statute and resolving all uncertainties in favor of remand, I conclude that Atlas Turner cannot be regarded as a "foreign state" for purposes of this lawsuit and that there is no basis for the exercise of removal jurisdiction on that ground.[3] As such, the case

must be remanded unless I conclude that it was properly removed on the alternative ground of diversity jurisdiction.

## IV. *Diversity Jurisdiction*

A case originally filed in state court may be removed to federal court if the traditional requirements of diversity jurisdiction, complete diversity of citizenship between all the parties and an amount in controversy exceeding $75,000, are satisfied. However, even if the jurisdictional requirements are met, an action is not removable on the basis of diversity unless the defendants overcome an additional hurdle not applicable when a complaint is filed in the first instance in federal court: none of the defendants may be a citizen of the forum state. 28 U.S.C. § 1441(b).

It is well-established that the removability of an action is determined as of the time the notice of removal is filed. *See, e.g.,* 14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3723, at 568–69 (3d ed.1998). Where removal is predicated upon diversity, a case is not removable unless the parties were diverse not only at the time removal is sought but at the time the state court complaint was filed. *See, e.g., United Food & Commercial Workers Union,* 30 F.3d at 301; *Royal Ins. Co. v. Jones,* 76 F.Supp.2d 202, 204 (D.Conn.1999); *Sentry Marketing, Inc. v. Unisource Worldwide, Inc.,* 42 F.Supp.2d 188, 190 (N.D.N.Y. 1999).[4] If the record in the present case

---

**3.** In this regard, it should be noted that plaintiff is considered the master of her complaint, even when it comes to considerations of whether a case must be remanded for lack of jurisdiction. *See* 16 Moore's Federal Practice § 107.14[3][b][ii], at 107.86–86.1 (3d ed. 1999) ("The plaintiff may dismiss the federal claims on removal and then move to remand."); *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994) ("While a defendant does have a right, given by statute, to remove in certain situations, plaintiff is still the master of his own claim."). Thus, even if broadly construed the complaint at bar alleges activity bearing upon liability that may have occurred while Atlas Turner was owned

by the Canadian government, plaintiff's amendment to clarify the allegations precludes that reading. *Cf. Dyrda v. Wal–Mart Stores, Inc.,* 41 F.Supp.2d 943, 948 (D.Minn. 1999) (where removed state court complaint did not state amount in controversy, plaintiff's stipulation in federal court that damages sought were less than $75,000 controlled; diversity jurisdiction, the basis for removal, was thus defeated and case remanded).

**4.** One exception to this rule applies in circumstances where a plaintiff creates diversity by its voluntarily dismissal of a non-diverse defendant after the initial state court complaint

does not reflect diversity at both stages, removal was improper and the case must be remanded.

It is undisputed that the plaintiff in the case at bar is a citizen of the state of Georgia and that one of the defendants, Georgia Pacific Corporation, is a corporation headquartered in Georgia. The status of both parties as Georgia citizens existed both when the state court complaint was filed and when Atlas Turner filed its notice of removal. Accordingly, it is axiomatic under the governing test that removal on the basis of diversity was improper in this case.

In objecting to remand, however, Atlas Turner notes that complete diversity presently exists in this case because in December 1999, several months after the case was removed, Georgia Pacific was dismissed pursuant to a settlement agreement with plaintiff.[5] Atlas Turner argues that as a result complete diversity among the parties has been achieved and jurisdiction properly exists.

This argument must be rejected. The applicable test is whether diversity jurisdiction existed when the removal petition was filed, not, as Atlas Turner suggests, whether it exists at the time the federal court is considering the motion to remand. It is not relevant in determining the propriety of removal—which is measured as of the date of removal—that diversity was later created by dismissal of the non-diverse defendant. If the removal was not proper in the first instance, the state court was never divested of jurisdiction and the federal court consequently has no jurisdiction to exercise. See *Jackson v. Allen*, 132 U.S. 27, 34, 10 S.Ct. 9, 33 L.Ed. 249 (1889) (where no diversity existed at time of removal, state court jurisdiction was not divested and case was remanded).

This Court knows of no decision addressing the precise question at issue here: whether post-removal dismissal of the only non-diverse defendant renders valid a notice of removal filed on the basis of diversity. However, the Court has found several cases that offer guidance.

Recently, the Supreme Court suggested in *dicta* that remand should be granted on the basis of improper removal in analogous circumstances. In *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996), a state case was removed to federal court on the asserted ground of diversity jurisdiction. Rejecting plaintiff's argument that diversity did not exist at the time the case was removed, the district court refused to remand the case. Shortly before the case proceeded to trial, the non-diverse defendant was dismissed and judgment was ultimately granted in favor of the remaining defendant. The district court's decision on remand was reversed on appeal by the Sixth Circuit. The appellate court held that diversity was indeed absent when defendant removed the case to federal court and concluded that it was error to deny remand of the case even though the non-diverse defendant had been dismissed prior to trial. The Sixth Circuit therefore vacated the final judgment, holding that because the case was improvidently removed it made no difference that the court had subject matter jurisdiction at the time of trial.

On appeal, the question the Supreme Court confronted was whether, although removal was improper because diversity did not exist at the time the case was removed, the final judgment could none-

---

has been filed, but before removal. *See, e.g., Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38, 40 & n. 2 (2d Cir.1980); *LGP Gem Ltd. v. Cohen*, 636 F.Supp. 881, 882 (S.D.N.Y.1986). In such a situation, courts uniformly hold that having attained diversity, removal may properly be made. For reasons discussed below, this exception, which has been applied only to

*pre-removal* dismissals, has no relevance to the case at bar.

**5.** While counsel for plaintiff agrees that Georgia Pacific was "let out" of the case in December 1999, *see* Affidavit of Mark Bibro, Esq. dated February 7, 2000 at ¶ 6, the court docket does not reflect any formal dismissal.

theless stand because the parties became diverse prior to judgment. *See* 519 U.S. at 64, 117 S.Ct. 467. The Supreme Court said:

> The question presented is whether the absence of complete diversity at the time of removal is fatal to federal court adjudication. We hold that a district court's *error* in failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered.

*Id.* (emphasis added).

The Court's precise holding in *Caterpillar* is not relevant to the motion at hand as this case has not reached the stage of *adjudication* and the only consideration is whether remand is required at this preliminary stage. The decision is instructive, however, because of the Supreme Court's implicit recognition that the district court's failure to remand a case in which diversity was absent at the time of removal constituted "error", notwithstanding that the non-diverse defendant was dismissed after removal. While the decision's particular focus was on the effect of the improvident removal on the resulting judgment, one cannot ignore the Supreme Court's baseline assumption that in the absence of complete diversity *at the time of removal* the failure to remand was error—even though diversity was later attained. A variation on that unmistakable theme appears later in the *Caterpillar* opinion at 519 U.S. at 70, 117 S.Ct. 467: "We accordingly home in on this question: Does the District Court's *initial misjudgment* still burden and run with the case, or is it overcome by the eventual dismissal of the nondiverse defendant?" (Emphasis added).

This reading of the case is reinforced by the Court's discussion of the plaintiff's ar-gument that allowing the judgment to stand would encourage defendants to remove cases prematurely with the knowledge that if diversity were later created the case could validly reach federal resolution. In rejecting that argument, the Court emphasized the existence of the remand rules and expressed the clear expectation that district courts would apply those rules properly so as to avoid repetition of the undesirable circumstances *Caterpillar* involved. *See* 519 U.S. at 77–78, 117 S.Ct. 467. The expressed presumption is that in analogous circumstances of improper removal, the case will be remanded before reaching the judgment stage. As the Court stated:

> The well-advised defendant, we are satisfied, will foresee the likely outcome of an unwarranted removal—a swift, and nonreviewable remand order attended by the displeasure of a district court whose authority has been improperly invoked.

*Id.* (citation omitted).

The case at bar places me within the universe of displeased judges to which the Court refers in the language just quoted. I am presented with a case in which although diversity was not present at the time of removal, the apparent dismissal of the non-diverse defendant has subsequently rendered the parties diverse. Under the circumstances, despite the present existence of diversity, I am compelled to remand. To allow the case to stay in this Court would validate the plaintiff's expressed concern in *Caterpillar* and in effect require me to create a new, unwarranted and potentially far-reaching exception to the rule that diversity must exist at the time of removal, applying to cases in which diversity is achieved after removal.[6] There is no au-

---

**6.** I note that there is no suggestion here that the "fraudulent joinder" exception to the requirement of complete diversity applies to Georgia Pacific. As discussed in text below, the doctrine of fraudulent joinder allows a federal court to disregard a non-diverse de-fendant in determining the propriety of removal if it is shown that the plaintiff has joined that non-diverse defendant purely to defeat diversity jurisdiction. Atlas Turner does not argue that Georgia Pacific was an invalid defendant, and in any event the fact

thority for such retroactive validation of an improper removal. Indeed, the validity of removal under those circumstances is belied by *Caterpillar* which nowhere suggested that the removal became any less *improper* by post-removal achievement of diversity, but instead dealt with the effect on the judgment of the *error* or *initial misjudgment* in failing to remand. In my view, the Court makes evident that the preferable, if not the required, course of dealing with such a case before it has reached the stage of judgment is to remand the case to the state court from which it was improperly removed.

*Petrop v. Lassen Art Publications, Inc.,* 939 F.Supp. 742, 745–46 (D.Hawai'i 1995) is also instructive. In *Petrop,* the removal petition was filed at a time when complete diversity did not exist. After removal, the non-diverse defendant was transformed into a diverse defendant by merger into its sister corporation, a citizen of a different state. Notwithstanding the attainment of diversity jurisdiction, the court remanded the case to state court since at the time of removal the parties were clearly not diverse and removal was therefore improvident.

■ If one keeps in mind the fundamental precept that removal jurisdiction must be ascertained as of the time of removal, one may fairly derive from these cases the principle that removal on the ground of diversity is not subject to post-hoc justification. In other words, a court cannot test the propriety of removal by ascertaining whether the statutory requirements are met prospectively; "[d]evelopments in the lawsuit ... subsequent to removal can not serve to confer federal court jurisdiction if none in fact existed as of the time of removal." *Wamp v. Chattanooga Housing Authority,* 384 F.Supp. 251, 253 (E.D.Tenn.1974) (case remanded after court determined that plaintiffs had no standing to maintain lawsuit in state court and therefore no justiciable controversy conferring federal jurisdiction existed),

*aff'd on other grounds,* 527 F.2d 595 (6th Cir.1975).

Atlas Turner has not cited and my own independent research has not discovered, any case that countenances such after the fact validation of removal. Thus, consistent with the principal of narrowly construing the removal statute and heeding the presumption in favor of remand, I conclude that plaintiff's post-removal dismissal of the only non-diverse defendant did not render the removal valid. The case must accordingly be remanded.

Although this conclusion settles the matter, it is worth noting that the removal petition suffered from an additional fatal defect: at least one of the named and served defendants is a New York corporation. As noted, even in the presence of complete diversity among the parties, removal is prohibited if any of the defendants is a citizen of the forum state. Allowing removal in cases involving a local defendant would defeat the purpose of diversity jurisdiction which is to protect out-of-state defendants from local prejudice. *See* Moore's § 107[14][2][e][i], at 107–62. The presence of a single in-state defendant serves to defeat removal on diversity grounds. *Id.*

It is undisputed that one of the defendants served in this case, Rapid–American Corporation, is a New York corporation. For this reason, removal was unavailable on the ground of diversity. This would remain true even if, contrary to my conclusion in text, removal on the basis of diversity jurisdiction were regarded as valid because the parties are presently diverse. *Cf. Trask v. Kasenetz,* 818 F.Supp. 39, 44–45 (E.D.N.Y.1993) (presence of New York defendants required remand after federal claim was dismissed even though diversity jurisdiction existed; as a citizen of the forum, "the defendant has no interest recognized by a federal statute in a federal forum").

that Georgia Pacific settled with plaintiff suggests otherwise.

■ Atlas Turner nonetheless argues that plaintiff has no viable case against Rapid–American and that plaintiff's failure to dismiss it warrants the conclusion that it is included in the lawsuit only for the purpose of defeating removal jurisdiction. *See* Supplemental Letter Brief of Suzanne M. Halbardier, Esq. dated February 7, 2000 ("Letter Brief") at 2. With this argument, Atlas Turner appears to invoke the principle known as "fraudulent joinder." Under that principle, a non-diverse defendant will be disregarded in ascertaining the existence of diversity on a remand motion if that defendant has no real connection to the case and is named merely to defeat diversity jurisdiction. As the Second Circuit has instructed:

> In order to show that naming a non-diverse defendant is a "fraudulent joinder" effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court. The defendant seeking removal bears a heavy burden of proving fraudulent joiner [sic], and all factual and legal issues must be resolved in favor of the plaintiff.

*Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir.1998) (footnote omitted).

■ Atlas Turner has failed to meet this exacting standard. The complaint broadly alleges that all of the defendants, including Rapid–American, "produced, manufactured, specified, supplied, installed or distributed asbestos and/or asbestos products ... to which the plaintiff was exposed, or was a contractor at a location where the plaintiff was exposed to asbestos, or manufactured, sold and/or installed equipment which had asbestos components or specified such components for operation...." *See* Complaint at ¶¶ 2–3. Atlas Turner argues that because plaintiff did not identi-

fy Rapid–American in her videotaped deposition testimony and because Rapid–American "was a manufacturer of pipe covering, block and cement ... we do not believe that [Rapid–American] is really a party whose products are at issue in this case." Letter Brief at 2.

Based on the complaint, which is ordinarily what the Court reviews to determine whether fraudulent joinder is at issue, *see Pampillonia*, 138 F.3d at 461 (defendant must show that there is no possibility that plaintiff can state a cause of action "based on the pleadings"); *Wheeler v. Frito–Lay, Inc.*, 743 F.Supp. 483, 485 (S.D.Miss.1990) (whether a non-diverse defendant was fraudulently joined is determined "by reference to the allegations made in the original pleadings"), plaintiff has broadly stated a claim against Rapid–American, and Atlas Turner does not argue otherwise.

Assuming *arguendo* that I am permitted to review the extra-pleading submission by Atlas Turner, I conclude that it does not show clearly and convincingly that plaintiff cannot possibly recover against Rapid–American in state court. Although Atlas Turner correctly notes that Rapid–American was not identified in plaintiff's deposition testimony, that omission does not necessarily defeat the possibility of a claim against it. None of the other defendants, with the exception of Armstrong World Industries, Inc., was mentioned by plaintiff in her testimony concerning her exposure to asbestos during the renovations at Café Geiger. If this omission alone were sufficient to preclude a finding of liability undoubtedly Atlas Turner, who also was not mentioned, would press for dismissal of the claim against it as well. Since Atlas Turner does not, its argument that no viable claim exists against Rapid–American must turn on counsel's assertion that Rapid–American did not manufacture asbestos. This argument suffers from two principle defects. First, Atlas Turner has submitted no evidence in the form of an affidavit or otherwise to show what Rapid–

American did or did not produce. Second, Atlas Turner has not established that even if Rapid–American were simply a manufacturer of pipe covering, block and cement, that would rule out any role in causing plaintiff's injury under the complaint's broad assertion of liability. After all, even the products counsel claims Rapid–American did manufacture could conceivably have been involved in the renovations and in the plaintiff's exposure to asbestos, and I do not regard plaintiff's testimony as precluding this possibility.

Resolving all factual and legal issues against Atlas Turner, I conclude that Atlas Turner has not established that there is no possibility of recovery against Rapid–American. Thus even if, contrary to my conclusion *supra*, the case was properly removed on the basis of diversity, the presence of Rapid–American made removal improvident since Atlas Turner has not shown that it was fraudulently joined as a defendant.

### V. *Conclusion*

For the reasons stated above, I grant plaintiff's request to amend the complaint as proposed, and conclude that the complaint, once amended in accordance with the representation of plaintiff's counsel, does not state a claim against defendant as a "foreign state" and that therefore no grounds exist for removal pursuant to 28 U.S.C. § 1441(d). In addition, because diversity jurisdiction was lacking at the time of removal, I conclude that this case was improvidently removed under 28 U.S.C. § 1441(a). Finally, removal was precluded by 28 U.S.C. § 1441(b).

Accordingly, plaintiff's motion is granted and the case will be remanded to New York Supreme Court pursuant to 28 U.S.C. § 1447(c).

Consistent with the discussion in Part II, *supra*, plaintiff is directed to file an amended complaint clarifying that plaintiff's alleged exposure occurred at her place of work in 1969, within ten (10) days after the date of issuance of this opinion.

Immediately following plaintiff's filing of the amended complaint, the Clerk of the Court is directed to transmit the file and a copy of this Order to the Clerk of the New York Supreme Court, New York County.

The foregoing is SO ORDERED.