United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 28, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

Nos. 02-20645
& 02-20767

_____

STRATA HEIGHTS INTERNATIONAL
CORPORATION; STRATA ENERGY
RESOURCES CORPORATION; HEIGHTS
ENERGY CORPORATION,

Plaintiffs-Appellees,

versus

PETROLEO BRASILEIRO, S.A., also known
as Petrobras Brasileiro,

Defendant-Appellant.

Appeal from the United States District Court for
the Southern District of Texas
(USDC No. H-00-CV-3052)
_____

Before KING, Chief Judge, REAVLEY and STEWART, Circuit Judges.

REAVLEY, Circuit Judge:[*]

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion
should not be published and is not precedent except under the limited circumstances
set forth in 5TH CIR. R. 47.5.4.

Strata Heights International Corp., Strata Energy Resources, and Heights Energy Corp. (collectively "Strata") sued Petróleo Brasilerio, S.A. ("Petrobras"), the national oil company of Brazil, for breach of contract, promissory estoppel, quantum meruit, and fraud and misrepresentation under Texas law and similar actions under Brazilian law. The district court denied Petrobras's motions to dismiss under the Foreign Sovereign Immunities Act ("FSIA"),[1] for lack of personal jurisdiction, to enforce a forum selection clause, and for forum non conveniens. Petrobras appealed the district court's denial of its FSIA motion to dismiss under the collateral order doctrine.[2] The district court denied Petrobras's remaining motions to dismiss but certified an interlocutory appeal. This court agreed to hear the interlocutory appeal and consolidated it with Petrobras's FSIA appeal.

Petrobras is not entitled to foreign sovereign immunity, and the exercise of personal jurisdiction over the company comports with traditional notions of fair play and substantial justice. We do not reach the district court's decision to deny the motion to dismiss for forum non conveniens because we hold that the district court erred by refusing to enforce the forum selection clause. Accordingly, we vacate and remand to the district court and order that the suit be dismissed.

## Background

In the mid-1990s, the Brazilian government decided to allow foreign companies to

---

[1] 28 U.S.C. § 1601 et seq.

[2] See Arriba, Ltd. v. Petroleos Mexicanos, 962 F.2d 528, 532 (5th Cir. 1992).

2

bid to explore oil in Brazil. Petrobras solicited U.S. businesses to become joint venture partners.

Pursuant to this solicitation, Strata signed a Memorandum of Understanding ("MOU") containing confidentiality provisions regarding potential opportunities for joint ventures between Petrobras and private companies. Under the MOU, Petrobras disclosed various projects available for joint development with assurances that the disclosures would be kept confidential. The MOU provided that all disputes arising out of or relating to the MOU be resolved through Brazilian arbitration. The MOU expired one year after it was signed unless extended by the parties, except that the contract's confidentiality provisions expired after two years. Neither Petrobras nor Strata extended the MOU, and it expired on June 11, 1998.

After reviewing the proposed projects, Strata selected two (BES-1 and BSF-1) on which to perform a technical review. After Petrobras confirmed the projects were available, Strata signed an Agreement for Technical Assessment ("ATA"). The ATA provided that Strata would pay Petrobras $20,000 to purchase technical information to assist their evaluation of the projects they were to bid upon. Strata would then submit a report to Petrobras evaluating those properties. The ATA was an addendum to the MOU and adopted its terms.

After Petrobras informed Strata that its ATA proposals were accepted, Strata learned that Petrobras had surrendered the BES-1 project to the Brazilian regulatory

3

agency, Agencia Nacional de Petrolio ("ANP"). Strata requested additional producing properties to replace the loss of BES-1 ("the rejuvenation projects").

Because both the MOU and the ATA were preliminary agreements, the parties were required to negotiate another agreement: the Technical Assistance Contract ("TAC"). The TAC was a production-sharing agreement comprised of the Heads of Agreement ("HOA"), an Operating Agreement, and other documents. The HOA provided that Strata and Petrobras would enter into a joint development agreement for the enhancement of BSF-1 and the rejuvenation projects.

According to the allegations of Strata's complaint, Petrobras prepared the HOA and Strata signed it after Petrobras's representative told Strata that Petrobras had agreed to the terms of the contract and would sign it as soon as its signatory officer was available.

Strata further alleges that Petrobras then informed Strata that Petrobras had surrendered BSF-1 to the ANP and that it would not execute the HOA because it now chose to sell the rejuvenation projects outright. Petrobras told Strata it would offer to sell up to seventeen oil and gas properties in Brazil to Strata on a preferred, no-bid basis. This essentially gave Strata a right of first refusal with regard to these seventeen properties in exchange for Strata giving up whatever rights it had under the HOA. Strata contends this offer was repeated by Petrobras's directors and officers on several occasions, who assured Strata that the offer was approved by Petrobras's Governing

4

Board.

At an unrelated conference in Houston in 1999, Ray Diaz, Managing Director of Strata Heights and President of Strata Energy, sought personal assurances from Jose Coutinho Barbosa ("Barbosa"), head of the Exploration and Production Division of Petrobras, regarding the preferred sale. According to Strata, during a break at the conference, Diaz spoke to Barbosa, who recognized Strata and stated that he was familiar with their past and pending transactions with Petrobras. Barbosa affirmed that he had approved the preferred sale of the properties to Strata, and that anything he approves is always approved by the Governing Board of Petrobras. Diaz asked Barbosa whether the sale was valid under Brazilian law, and Barbosa assured Diaz it was. He stated that Petrobras's legal department had concluded the sale was legal and would hold up in court if challenged. He added that the legal department would so advise the Board when the matter came up for approval. After this meeting, Strata requested that Petrobras provide written confirmation of the preferred sale offer. Petrobras sent Strata an unsigned confirmation letter but never forwarded a signed version.

In March 2000, Petrobras notified Strata that the private, preferred sale was prohibited under Brazilian law, and that Petrobras was required to surrender the rejuvenation projects to the ANP for open bidding. Strata sent Petrobras a letter proposing that the rejuvenation projects be excluded from the public bidding, but Petrobras did not respond. Strata did not submit a bid during the open bidding. This suit

5

followed.

## Foreign Sovereign Immunity

We review determinations of foreign sovereign immunity under the FSIA de novo.[3]  The FSIA sets forth the sole and exclusive standards to be used to resolve all sovereign immunity issues raised in federal and state court by foreign sovereigns or their instrumentalities.[4]  A foreign sovereign is not entitled to immunity from suit if its conduct falls within an exception to the FSIA.  Once such exception, known as the commercial activity exception, provides:

> (a)  A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
> . . .
>> (2) in which the action is based upon [1] a commercial activity carried on in the United States by the foreign state; or upon [2] an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon [3] an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.[5]

The district court determined that Strata's fraud claims fell within the second clause, and that its contract claims fell within the third clause of the commercial activity exception.

Petrobras complains that the conversation in Houston between Diaz and Barbosa

---

[3]  Pere ex rel. Pere v. Nuovo Pignone, Inc., 150 F.3d 477, 480 (5th Cir. 1998).

[4]  Arriba, 962 F.2d at 532.

[5]  28 U.S.C. § 1605(a)(2).

was "plainly commercial in nature" because the conversation concerned business

opportunities in Brazil, and thus Strata should have proceeded under the first clause with

respect to its fraud claims. Although this court has previously determined that the second

clause applies only to claims based upon conduct that is not commercial,[6] we find

Petrobras's argument unconvincing. Even if fraud and misrepresentation are commercial,

as opposed to noncommercial, acts, the commercial activity exception applies in this

particular case.[7] Despite the district court's refusal to consider the applicability of the

---

[6] See Byrd v. Corporacion Forestal y Indust. de Olancho, S.A., 182 F.3d 380, 390 (5th Cir. 1999); Voest-Alpine Trading USA Corp. v. Bank of China, 142 F.3d 887, 892 (5th Cir. 1998).

[7] Although we are bound by the decisions in Voest-Alpine and Byrd, we note that in the House of Representatives Report on the FSIA Congress stated:

> Although some or all of [the acts covered by the second clause] might also be considered to be a 'commercial activity carried on in the United States,' as broadly defined in section 1603(e), it has seemed advisable to provide expressly for the case where a claim arises out of a specific act in the United States which is commercial or private in nature and which relates to a commercial activity abroad. It should be noted that the acts (or omissions) encompassed in this category are limited to those which in and of themselves are sufficient to form the basis of a cause of action.

H.R. REP. NO. 1487, 94th Cong., 2d Sess., at 19(1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6618. Thus, the Voest-Alpine court, seizing on the Supreme Court's distinction between sovereign and commercial acts in Saudia Arabia v. Nelson, 507 U.S. 349 (1993), may have read a distinction into the statute that neither Congress nor the Supreme Court intended. See id. at 358-61.

In Nelson, the Supreme Court noted that "Congress manifestly understood there to be a difference between a suit 'based upon' commercial activity and one

first clause, it is well settled that this court will not reverse a district court if it can be affirmed on any ground supported by the record, regardless of whether that ground was considered by the lower court.[8]  Strata's fraud claims are based upon either a commercial act performed within the United States or upon a noncommercial act performed within the United States in connection with commercial activity abroad.  Accordingly, the district court had jurisdiction to consider Strata's fraud claims against Petrobras, regardless of whether that jurisdiction was created by the first or the second clause of the commercial activity exception.  Petrobras's remaining arguments regarding the district court's application of the second clause to Strata's fraud claims are meritless.

Petrobras also argues that the district court erred by applying the third clause of the commercial activity exception, which requires an action be based upon commercial activity abroad that has a direct effect on the United States, to Strata's contract claims. Recognizing that "a nontrivial effect in the United States need only be an immediate

---

'based upon' acts performed 'in connection with' such activity," but concluded only that the first clause "calls for something more than a mere connection with, or relation to commercial activity."  Id. at 358.  The Court did not conclude that the second clause cannot apply in cases in which a suit is based upon a commercial act in the United States performed in connection with commercial activity abroad; it focused instead on the relationship between public and private acts with respect to the first clause.  See id. at 358 n.4, 359-63.

[8]  See, e.g., United Indus., Inc. v. Simon-Hartley, Ltd., 91 F.3d 762, 765 n.6 (5th Cir. 1996).

8

consequence of the foreign state's activity to support jurisdiction under the third clause,"[9] Petrobras contends that Strata's losses were not an immediate consequence of Petrobras's activity, and, even if they were, this court should recommend en banc reconsideration of Voest-Alpine.

We decline to follow Petrobras's suggestion. Strata's complaint sufficiently alleges contract losses, in the form of reliance, expectancy, and restitution damages, that occurred as an immediate consequence of Petrobras's commercial activity in Brazil. In particular, Strata complains that Petrobras represented that it had agreed to abide by the terms of the HOA when it had not, that Strata relied on Petrobras's representations and spent considerable sums and suffered opportunity costs as a result of that reliance, and that Strata performed valuable services which benefitted Petrobras and for which it has not been justly compensated.

Strata has alleged that Petrobras targeted American corporations as joint venture partners, actively solicited their participation, and then requested that they perform extensive evaluations of Brazilian properties knowing those evaluations would be done with American resources. It was not merely fortuitous that the plaintiffs were American companies; it was part of Petrobras's business plan.[10] Accordingly, we conclude that

---

[9] Voest-Alpine, 142 F.3d at 896.

[10] Cf. Byrd, 182 F.3d at 391 (concluding that where the "appellants foresaw . . . the financial harms which occurred to appellees," the third clause abrogated sovereign immunity ).

9

Petrobras's representations of its intent to enter the HOA and its acceptance of the ATA reports is conduct upon which Strata's claims are based and that some undetermined but nontrivial amount of Strata's losses followed as an immediate consequence of such conduct.

We are mindful of the dangers of expanding the third clause of the commercial activity exception to include too much. We are also mindful, however, of the Supreme Court's admonishment that we not read limitations into this clause that are not expressed in the statute.[11] The requirement that a direct effect under the third clause be nontrivial sufficiently limits the scope of foreign sovereign immunity, for it precludes a few phone calls or letters from the United States from constituting a direct effect.[12] We need not determine here when an effect is so small as to be trivial, as in this case Strata allegedly spent thousands of dollars, as a result of representations made by Petrobras, pursuing a contract that Petrobras ultimately breached. The district court properly applied the third clause of the commercial activity exception to the FSIA to Strata's claims to determine that Petrobras was not entitled to foreign sovereign immunity.

**Personal Jurisdiction**

We review determinations of personal jurisdiction de novo if the facts upon which

---

[11] See Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 618 (1992).

[12] Cf. Voest-Alpine, 142 F.3d at 896; Byrd, 182 F.3d at 390.

10

jurisdiction is based are not in dispute.[13]  Petrobras contends the district court erred

because, while it concedes minimum contacts with the United States and Texas, the

exercise of personal jurisdiction by Texas courts over Petrobras does not comport with

fair play and substantial justice.

Once a plaintiff has established minimum contacts, the burden shifts to the

defendant to establish that the exercise of jurisdiction is unfair.[14]  Petrobras has not met

its burden in that regard.  As the district court determined, Petrobras's actions

"demonstrate[d] its intent to benefit from this nation's legal and commercial climate."

Given Petrobras's targeting and soliciting of American joint venture partners in Texas and

California, Petrobras will not be unfairly burdened by litigation in Texas.  Although

Petrobras endeavored to avoid litigation in the United States, their efforts reveal that the

present action, or one like it, was foreseeable.  In light of these circumstances, the burden

on Petrobras is no greater than Strata's interest in convenient and effective relief.

Moreover, Texas has an interest in resolving Strata's claims.  When a party

commits a tort in Texas, it is not unfair or substantially unjust to make it answer for that

tort in Texas.[15] Although Brazil has a strong interest in a dispute involving its national oil

---

[13]  See Adams v. Unione Mediterranea Di Sicurta, 220 F.3d 659, 667 (5th Cir. 2000).

[14]  See Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999).

[15]  See, e.g., Central Freight Lines, Inc. v. APA Transp. Corp., 322 F.3d 376, 383-84(5th Cir. 2003); Guidry v. United States Tobacco Co., 188 F.3d 619, 628-30 (5th Cir. 1999).

11

company, that alone cannot render the exercise of jurisdiction unfair else courts would never be able to exercise personal jurisdiction over foreign sovereigns. Thus, the exercise of personal jurisdiction over Petrobras by Texas courts comports with traditional notions of fair play and substantial justice.

## Forum Selection Clause

Petrobras also contends that the district court erred by declining to enforce the forum selection clause contained in the MOU. We review determinations of the enforceablity or scope of forum selection clauses de novo.[16] The district court determined that Strata's claims did not arise under the MOU, and thus declined to dismiss the suit. The forum selection clause, however, also applies to claims related to the MOU:

> Any dispute, controversy or claim <u>arising out of or relating to</u> this MOU or the breach, termination, or invalidity hereof, which cannot be settled amicably between the Parties shall be settled by arbitration to be conducted in Rio de Janeiro in the Portuguese language, in accordance with the rules of the United Nations Commission on international trade law (emphasis added).

Thus, if Strata's causes of action relate to the MOU or the ATA, we must reverse the district court and order that it dismiss Strata's suit on remand. We do not resolve whether the claims arise out of the MOU or ATA because we find the claims relate to those agreements.

Courts must presumptively enforce forum selection clauses in international

---

[16] <u>MacPhail v. Oceaneering Int'l, Inc.</u>, 302 F.3d 274, 278 (5th Cir. 2002).

12

transactions out of concern for comity and to promote international trade and commerce.[17]

"An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute."[18]

Because arbitration is a matter of contract, courts may require a party to submit a dispute to arbitration only if the party has expressly agreed to do so.[19] Strata concedes that the MOU's foreign arbitration clause is binding with respect to disputes arising under or relating to the MOU, but argues that its claims do not relate to the MOU or ATA and thus does not fall within the scope of the clause.

We generally "resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration."[20] The clause requiring arbitration in Brazil is undoubtedly a "broad" arbitration clause that "embrace[s] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute."[21]

---

[17] See Haynsworth v. Corporation, 121 F.3d 956, 962 (5th Cir. 1997) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9 (1972)).

[18] Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974).

[19] Personal Security & Safety Sys., Inc. v. Motorola, Inc., 297 F.3d 388, 392 (5th Cir. 2002).

[20] Neal v. Hardee's Food Sys., Inc., 918 F.2d 34, 37 (5th Cir. 1990).

[21] Pennzoil Exploration & Prod. Co. v. Ramco Energy, 139 F.3d 1061, 1067 (5th Cir. 1998).

13

"[W]here the parties include a broad arbitration provision in an agreement that is 'essential' to the overall transaction, we will presume that they intended the clause to reach all aspects of the transaction."[22]  Accordingly, it is only necessary that Strata's claims "'touch' matters covered by [the MOU or ATA] to be arbitrable."[23]

To determine whether Strata's claims fall within the scope of the forum selection clause, we must explore the relationships between the agreements at issue.  The MOU noted that Petrobras would be allowed to keep an undefined number of areas for exploration and exploitation because Brazilian oil and gas law was in a period of transition.  Petrobras agreed to disclose general information on these possible joint ventures, and Strata agreed to maintain certain confidentiality measures with regard to that information.  Although the MOU did not bind the parties to proceed to the ATA, the contract provided that "Petrobras shall keep contacts with Strata aiming at the execution of an [ATA]."

The ATA, in turn, provided that Petrobras would release more detailed data regarding certain properties selected by Strata under the MOU and Strata would prepare a report on its technical and economical assessment of each such property.  The ATA "serve[d] the purpose of an addendum to the MOU," because the MOU's confidentiality

_____

[22]  Personal Security, 297 F.3d at 395.

[23]  Pennzoil, 139 F.3d at 1068 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S 614, 625 n.14 (1985)).

14

provisions applied equally to the information Petrobras disclosed pursuant to the ATA. Although the ATA was not intended to give the parties rights or to act as an offer by Petrobras to proceed to the execution of joint development agreements, the ATA provided that "[i]f Strata has decided to [proceed] further in the negotiations with Petrobras, . . . the parties shall discuss a timetable for negotiation of the economical, legal, and operational terms of the [joint venture agreements] within a reasonable time."

One such joint venture agreement, the HOA, defined the rights and obligations of the parties with respect to operations under a yet-to-be negotiated Operating Agreement. Strata agreed to make certain minimum capital expenditures and to carry out its Minimum Work Program set forth in its ATA report. Petrobras agreed to accept 100% of Strata's production under the Operating Agreement and to pay Strata in the form of a Production Reward. The HOA provided that it was not a binding agreement and that the parties could withdraw "for any reason without any claim against any other party." However, the HOA also provided that the parties "shall meet to negotiate the Operating Agreement."

We think the MOU, ATA, and HOA are sufficiently interrelated to require us to apply the MOU's forum selection clause to each of Strata's causes of action. As in Pennzoil, "[t]he dispute flows from a series of interrelated agreements, all of which center around the overriding goal of acquiring [oil and gas] development rights [in Brazil]."[24]

---

[24] 139 F.3d at 1068.

15

Additionally, the terms of the agreements demonstrate their interrelationship; each contract contemplates that the parties will negotiate future contracts. Although the agreements at issue here were not executed contemporaneously, each was aimed at creating a joint venture to explore oil and gas properties in Brazil and each was an essential part of the transaction. The HOA binds Strata to perform the Minimum Work Program set forth in its ATA proposal, and the ATA expressly incorporates the terms of the MOU. Accordingly, Strata's claims that Petrobras wrongly prevented it from enforcing its rights under the HOA, through fraud or through breach of contract, relate to the MOU and ATA.

In the alternative, Strata argues that even if its claims under the HOA relate to the MOU and ATA, the ATA incorporated the 12-month term provision of the MOU, and thus both the MOU and the ATA expired prior to the alleged breaches and misrepresentations identified in Strata's complaint. Strata notes that the MOU contains a survivability clause for the confidentiality provisions, extending the term of the contract with respect to those provisions to two years. Thus, Strata contends that this court should refuse to enforce the forum selection clause on the ground that it has expired by applying the principle that to express one thing is to exclude others.[25]

---

[25] Strata would have a better argument if the survivability clause were contained in the term provisions of the MOU. The survivability clause, however, is contained within the confidentiality provisions of the contract. Thus, it is not surprising that the clause addresses the survivability of the confidentiality provisions and not the dispute resolution provisions.

This circuit has not addressed the precise question of whether dispute resolution provisions within a contract survive the termination or expiration of that contract. Absent an expression of contrary intent, broad arbitration clauses—if they are to mean what they say—must survive the expiration of the contract because such clauses are intended to reach all aspects of the parties' relationship, including post-contractual disputes.[26] Courts must enforce arbitration clauses unless it can be said "with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute[s] at issue."[27] When a clause purports to cover all disputes relating to the contract, that clause covers all disputes relating to the contract regardless of when that dispute arises. Were we to hold otherwise, we would be reading a temporal requirement into the clause that its plain language cannot support.

Strata urges us to remand to allow it to conduct additional discovery and asks this court to disregard evidence filed with Petrobras's objections to the magistrate's Memorandum and Recommendation. Strata complains that Petrobras did not obtain any leave of court to file new evidence pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) when it filed its objections. Even if those provisions somehow limited Petrobras's right to offer new evidence or the district court's discretion to consider it, none of the evidence offered by Petrobras is relevant to our interpretation of

---

[26] See Personal Security, 297 F.3d at 394.

[27] See Neal, 918 F.2d at 37 (citations and quotation marks omitted).

17

the forum selection clause.  Similarly, as the outcome of this appeal depends entirely on the interpretation of unambiguous contract language, granting Strata additional discovery would not inform the construction of the forum selection clause and is therefore unnecessary.

As the forum selection clause obliges us to order that the case be remanded and dismissed, we do not address whether the district court erred by declining to dismiss for forum non conveniens.

## Conclusion

Petrobras is not entitled to foreign sovereign immunity because Strata's claims fall within the commercial activity exception to foreign sovereign immunity expressed in 28 U.S.C. § 1605(a)(2).  Strata's fraud and misrepresentation claims are based either upon a commercial act in the United States or a noncommercial act in the United States, and thus fall within either the first or second clause of the commercial activity exception.  We do not decide whether fraud and similar business torts are commercial or noncommercial acts.  We note, however, that under this court's current construction of the second clause of § 1605(a)(2), which requires a suit to be based upon noncommercial activity, the clause has little if any content, particularly if tortious activities driven by a profit motive are considered commercial.[28]

---

[28]  The Supreme Court has stated that the existence of a profit motive should not determine whether conduct is commercial, because the FSIA requires courts to look to the nature and not the purpose of the conduct.  See Weltover, 504 U.S. at

18

Nor is Petrobras entitled to immunity from Strata's contract claims. Strata allegedly suffered nontrivial losses in the United States as an immediate consequence of Petrobras's breaches of contract in Brazil. Petrobras's argument that it is immune from suit hinges on its characterization of Strata's damages as unilateral expenditures. Nothing in the statute, however, precludes application of the third clause to losses in the form of expended capital.[29] In such cases, so long as the expenditures are nontrivial and their loss is an immediate consequence of the foreign sovereign's conduct, sovereign immunity is abrogated by the third clause of the commercial activity exception. Additionally, the district court's exercise of personal jurisdiction over Petrobras comports with traditional notions of fair play and substantial justice.

The district court erred, however, by failing to enforce the broad forum selection clause contained in the MOU requiring all disputed related to that document to be arbitrated in Brazil. In light of the interrelationship of the MOU, ATA, and HOA, we cannot say that Strata's claims under the HOA do not relate to the MOU or ATA. Accordingly, we vacate the order of the district court and remand the case with orders that the cause be dismissed.

VACATED and REMANDED.

---

614.

[29] Accordingly, Petrobras's attempts to distinguish <u>Voest-Alpine</u> on the ground that Petrobras did not fail to fulfill an obligation to pay Strata are unpersuasive.

19