# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**F I L E D**
February 3, 2011

No. 10-20266

TRANSCOR ASTRA GROUP S.A.,

Plaintiff - Appellee

v.

PETROLEO BRASILEIRO S.A.-PETROBRAS,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-2072

Before JOLLY, HIGGINBOTHAM, and SMITH, Circuit Judges.

PER CURIAM:[*]

This interlocutory appeal arises from the dissolution of a joint venture between subsidiaries of two foreign parent corporations, Plaintiff-Appellee Transcor Astra Group S.A. ("Transcor") and Defendant-Appellant Petrobras Brasileiro S.A. – Petrobras ("Petrobras Brazil"). We are asked to review the district court's denial of Petrobras Brazil's motion to dismiss for lack of subject matter jurisdiction. The district court held that jurisdiction extends to this suit under the "commercial activity" exception to the Foreign Sovereign Immunities

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20266

Act.  After study of the briefs, review of the relevant portions of the record, and thorough oral arguments, we have concluded that Transcor has alleged facts sufficient to show that its claim is based upon commercial activity carried out by Petrobras Brazil in the United States, or elsewhere having a direct effect in this country, and accordingly we affirm the order of the district court.

I.

Transcor is a Belgian corporation with its principal place of business in Belgium.  Petrobras Brazil is a Brazilian corporation with its principal place of business in Brazil.  From 2006 to 2008, Transcor's U.S. subsidiary, Astra Oil Trading NV ("Astra Oil"), and Petrobras Brazil's U.S. subsidiary, Petrobras America, Inc. ("Petrobras America"), co-owned and operated an oil refinery in Pasadena, Texas ("Pasadena Refining") and the trading partnership that supplied Pasadena Refining with its raw materials ("PRSI Trading").  Pursuant to a contract concluded in March 2006, Astra Oil agreed to sell 50% of its interest in Pasadena Refining to Petrobras Brazil, and the parties agreed to form PRSI Trading to provide the raw materials and market the refined products. Petrobras Brazil later assigned its right to purchase the 50% stake in Pasadena Refining to Petrobras America.

Citing disagreements about their strategic plans for the venture, Petrobras America and Astra Oil sought to dissolve entirely their business relationship in 2007.  These disagreements eventually led to discussions about Petrobras America buying out Astra Oil's 50% interests in the refinery and the trading partnership.  Those discussions resulted in a two-page agreement, signed by Transcor and Petrobras Brazil on December 5, 2007 (the "letter agreement"), which was intended to govern the terms of the buyout.  The letter agreement provided that Petrobras Brazil would purchase Astra Oil's interest in Pasadena Refining for $700 million; the parties would liquidate PRSI Trading; and Petrobras Brazil "would . . . be responsible for (and would reimburse Astra for)

2

No. 10-20266

all capital expenditures or other contributions incurred after October 1st, 2007 by Astra or, any affiliate, to" the joint venture.  The letter agreement stated that it "intends to fix the agreement in principle regarding the main items of the transaction.  Based on this agreement in principle, both parties will negotiate, in good faith and as soon as possible, the text of a definitive agreement."[1]

The district court found that after signing the letter agreement, Petrobras Brazil and Transcor began to negotiate a final agreement and to draft the closing documents.  Petrobras Brazil contests this finding and argues that Petrobras Brazil and Transcor were not parties to the 2008 negotiations; instead, Petrobras Brazil argues, Petrobras America and Astra Oil negotiated independently of their parent corporations.  Undisputed is the fact that in 2008 Petrobras Brazil wired approximately $202 million to Petrobras America, money that was then used to fund Pasadena Refining and PRSI Trading.  The wire transfer was made in response to five requests from a Petrobras America employee, who stated that the money was necessary to fund the joint venture.  In a separate arbitration proceeding, a Petrobras Brazil employee testified that in wiring these funds for the joint venture, Petrobras Brazil was "just following in good faith" what was written in the letter agreement.

Ultimately, the deal never closed, and Transcor now claims that the letter agreement was an enforceable contract that Petrobras Brazil breached by failing to conclude the buyout.  Before the magistrate judge addressed the merits of this complaint, Petrobras Brazil moved to dismiss for lack of jurisdiction and standing.  It contended, in relevant part, that because it is partly controlled by the Brazilian government, it is immune from suit in the United States under the Foreign Sovereign Immunities Act ("FSIA").  Transcor responded that Petrobras Brazil is subject to suit under a statutory exception to the FSIA because it

---

[1] The letter also contains an introductory sentence stating that what follows is "a coordinated version of our agreements."

No. 10-20266

engaged in commercial—as opposed to sovereign—activity, both in the United States and elsewhere having a direct effect in the United States.

The district court ruled that Transcor met its burden of alleging "some facts" that Petrobras Brazil carried on commercial activity having substantial contact with the United States. The court therefore denied the motion to dismiss for lack of subject matter jurisdiction. Under the collateral-order doctrine, we have jurisdiction over Petrobras Brazil's appeal of the district court's order. *Stena Rederi AB v. Comision de Contratos del Comite*, 923 F.2d 380, 385 (5th Cir. 1991).

## II.

The Foreign Sovereign Immunities Act[2] "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). We review the district court's application of the FSIA *de novo*. *Pere v. Nuovo Pignone, Inc.*, 150 F.3d 477, 480 (5th Cir. 1998). To the extent the district court has made "jurisdictional findings of fact," they are reviewed for clear error. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 845 (5th Cir. 2000) (quoting *Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997)).

"Under the FSIA, a foreign state is presumptively immune from jurisdiction of the United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 215 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1689, *and cert. denied*, 130 S. Ct. 1713 (2010) (internal quotation marks and citations omitted). For purposes of the FSIA, a "foreign state" includes "an agency or instrumentality of a foreign state." *Bd. of Regents of Univ. of Texas System v. Nippon Tel. & Tel. Corp.*, 478 F.3d

---

[2] The FSIA is codified at Title 28, United States Code, §§ 1330, 1332, 1391(f), 1441(d), and 1602–1611.

4

No. 10-20266

274, 278 (5th Cir. 2007) (quoting 28 U.S.C. § 1603(b)).  It is undisputed that Petrobras Brazil is an agency or instrumentality of Brazil.

The issue presented in this appeal is whether the commercial activity exception to the FSIA applies in this case.  Under that exception, "a foreign state shall not be immune from the jurisdiction of United States courts in any case 'in which the action is based upon a commercial activity carried on in the United States by the foreign state.'" *Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993) (quoting 28 U.S.C. § 1605(a)(2)).[3]  "Commercial activity" is defined as "either a regular course of commercial conduct or a particular commercial transaction or act.  The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  28 U.S.C. § 1603(d).  The commercial activity must have "substantial contact with the United States."  *Id.* § 1603(e).  Transcor bears the burden to "produce some facts to show that the commercial activity exception to immunity applies," but Petrobras Brazil "retains the ultimate burden of proof on immunity."  *See Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533 (5th Cir. 1992).

We hold that the commercial activity exception to the FSIA applies in this case because Transcor's claim is—at least in part—"based upon" Petrobras Brazil's commercial activities in the United States.  For purposes of the FSIA,

---

[3]  The commercial activity exception provides specifically that a foreign state or instrumentality thereof may be subject to suit in the United States where

> the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

a claim is based upon "those elements of [the] claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Nelson*, 507 U.S. at 357. Transcor's breach-of-contract claim requires it to establish: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (internal quotation marks and citations omitted). The FSIA jurisdictional inquiry requires us to "isolate those specific acts of the named defendant that form the basis of the plaintiff's suit." *de Sanchez v. Banco Central De Nicar.*, 770 F.2d 1385, 1391 (5th Cir. 1985). We conclude that the following commercial activities having substantial contact with the United States are attributable to Petrobras Brazil and form the basis for at least one element of Transcor's claim:

(1) the $202 million payment from Petrobras Brazil to Petrobras America, which evidences the existence of a valid contract (*i.e.*, the letter agreement) between the parties and partial performance thereunder; and

(2) the negotiations in the United States conducted by Michael Ditchfield, who was transferred by Petrobras Brazil from its Argentinian subsidiary to Petrobras America after the signing of the letter agreement and who, by his own admission, worked closely with lawyers for Petrobras Brazil and with Astra Oil's CEO to negotiate a buyout agreement in accordance with the letter agreement.

We note also that the district court was not clearly erroneous in determining that buyout negotiations took place in the United States concerning ownership of a U.S. corporate entity pursuant to the terms of the letter agreement. In the light of this observation, we further conclude that Petrobras Brazil's letter agreement with Transcor "cause[d] a direct effect" in the United States, for purposes of jurisdiction under the FSIA, in the sense that it prompted these further negotiations.

6

No. 10-20266

Because these activities are sufficient to sustain Transcor's burden of producing "some facts" to show that its claim is based upon Petrobras Brazil's commercial activity either carried out in the United States or having a direct effect here, we need not proceed any further.[4] We hold that the district court has subject matter jurisdiction over this suit under the commercial activity exception to the Foreign Sovereign Immunities Act, and we therefore AFFIRM the district court's order denying the motion to dismiss.

AFFIRMED.

---

[4] Specifically, we find it unnecessary to address the parties' additional arguments as to whether Petrobras Brazil's intervention in a related arbitration proceeding after the filing of the instant complaint may confer jurisdiction under the commercial activity exception, and whether the "direct effects" version of the exception was satisfied when Petrobras Brazil failed to close the buyout and remit payment in 2008.